KANSAS CITY, MEMPHIS & BIRMINGHAM RAILROAD COMPANY *v.* CALVIN S. D. HAWKINS.

RAILROADS. *Dog seen on track. Duty of engineer. Carelessness. Wilfulness.*

> If the engineer of a railroad train saw, or should have seen, a bloodhound trailing along the track a short distance in advance of the train, and having time to do so, does not give warning or do anything to prevent his engine from striking the animal and thereby causes it to be run over and killed by the train, his carelessness amounts to design and the railroad company will be liable to the owner for the value of the dog.

FROM the circuit court of Marshall county.

HON. PERRIN H. LOWREY, Judge.

Hawkins, appellee, was plaintiff, and the railroad company, appellant, was defendant in the court below. From a judgment in plaintiff's favor for $450 defendant appealed to the supreme court.

The evidence was, in substance, as follows: Plaintiff was employed by the sheriff of Marshall county, Miss., from whom some prisoners had escaped, to trail them up with his dog. At the time plaintiff's dog, a valuable, well-trained bloodhound, was killed, there were two men and two other dogs along with plaintiff and his dog. They had trailed the prisoners down the railroad track, going west nearly one thousand yards, and were in a cut, and there was also a curve in the railroad before it reached the curve extending through the cut. Just before the train that killed the dog passed, which was a freight train, a passenger train passed them, and it blew its whistle, and the men all got off the track, and took the dogs off; but this freight train ran upon them very fast and gave no warning of any kind, no whistle was blown, and the bell was not rung. The men were all walking along the track together, and one dog was on the track about ten feet ahead of them, and plaintiff's dog was nearly thirty feet ahead. The first thing that gave any warning of the approaching train was the flash of the headlight, when one of the men said, "Lookout, here comes a train," and all of the men at once got off the track, and the nearest dog was reached and gotten off the track, but there was not time enough to get to the dog that was killed. The engineer and fireman both testified that they did not know any dog was killed, and that the bell was not rung, and the whistle was not blown. The engineer testified he was keeping a strict lookout, and did not see the men or the dogs. The fireman did not recollect what he was doing.

*J. W. Buchanan,* for appellant.

The court, in *Mobile, etc., R. R. Co.* v. *Holliday,* 79 Miss., 294, in discussing the liability of railroad companies for killing dogs, says:

"Of course these observations do not apply where a dog was purposely run down, or where he was seen in such a cut as prevented escape, on where the dog was seen and the negligence was so gross as to be tantamount to design."

In the case at bar, as the dog was not seen, there could not
have been any purpose to run him down and kill him.    From
the width of the cut and the space on either side of the track
to the embankment, there was nothing to prevent the dog from
escaping the engine.    It is undisputed that the dog was not
seen, and it cannot be said that it was negligence in failing to
see him, much less such gross negligence as to be tantamount
to design.

*Alexander & Alexander,* for appellee.

The only defense set up is that the engineer and fireman did
not see the crowd of men and dogs.    We can safely rest this
case on the testimony of the engineer and fireman themselves.
They testified that the dog was killed in a cut 180 yards long,
through which the track makes a very gradual curve.    It is true
they say they did not see the dog, but they do not testify that
they were occupied with lubricating the engine or adjusting
valves, etc.

The engineer very candidly admitted that he does not know
whether or not he was on the train that killed the dog.    If he
was he never saw the dog nor the men, but while sitting bolt
upright on his seat, and on a sharp lookout, he plowed through
this crowd of men and dogs without seeing them.    His powers
of vision were very much like those of Sam Weller at the Pick-
wick trial.    The engineer testified as follows: "State whether
you were on the lookout."    "Yes, sir, I always look ahead
unless it is for a second or two at a time."    He says that if
the men had been on the side of the track he could certainly
have seen them.    As a matter of fact, the men were on the
side of the track when the engine passed.    There was a great
deal of testimony as to the engineer's vision being obstructed
by the boiler head, etc., but this is immaterial, for the fireman
was at the opposite window and he has no recollection of what
he was doing at the time.    He says that he could not tell
whether he was on the lookout at the time or not.    "I don't

know what I was doing then." Since the burden of proof was on appellant to show due care it is not met by such negative testimony. The cases in which our court has held that the presumption of negligence was overcome are cases where the engineer and fireman knew and testified positively what they were doing at the time. It would practically abolish the presumption of negligence if it is held to have been overcome, where the engineer and fireman testify that they have no recollection of what they were doing at the time. But, not only does the testimony of the engineer and fireman come short of overcoming the presumption of negligence, but it positively establishes negligence. It would be negligence for both the engineer and fireman to avert their eyes from the track and both, in the absence of any accident to the engine, to turn their attention to the engine as the train was entering a long cut in a curve of the track. Surely, if there is any time in which a regard for human life, the safety of the crew and passengers, as well as of persons or property on the track, would call for the utmost care, it would be when a fast running train was rounding a curve in a long cut. We do not hesitate to say that it would be the grossest negligence if both the engineer and fireman failed to keep a lookout under such circumstances. There is at all times a possibility of obstructions on the track, of persons or animals being on the track, and the presence of the curve and the cut on this steep down grade would make it all the more important to keep a sharp lookout. It is quite evident that the jury did not believe the engineer and fireman when they stated that they did not see the men and the dogs. It is inconceivable, if both were in positions and on the lookout, that they could have failed to see them. It is certain that there were three men, two of them holding dogs, and all on the side of the track, and they were surely seen by either the engineer or fireman, if not, the engineer and fireman were either grossly inattentive or grossly negligent in both attending to some other matter at the time, or they are testifying to an improbability

and the jury did not believe them. It is not denied that it was a bright, moonlight night, and no headlight was necessary to see the men and the dogs.

Argued orally by *C. H. Alexander,* for appellee.

Calhoon, J., delivered the opinion of the court.

If the engineer was on the lookout, as he says he was, in coming around a curve debouching into a cut, he must have seen the men and dogs. The jury manifestly thought either that he did see them, or should have seen them by proper lookout, in entering so dangerous a piece of road. There is no pretense that he was engaged about his engine. One toot of his whistle would, in all probability, have prevented the damage. From the evidence the jury must have thought he did see, and, in that case, the carelessness was "so gross as to be tantamount to design." *Mobile, etc., R. R.* v. *Holliday,* 79 Miss., 297; 30 South., 820, does not apply to the facts here.

*Affirmed.*