FORD C. HARRISON v. SOUTHERN RAILWAY COMPANY.

[46 South., 408.]

1. RAILROADS. *Person on track. Action for injuries to. Evidence.*

In a suit against a railroad company for the death of a child, run over by a train, the plaintiff claiming that the engineer should have seen the child on the track in time to have prevented the killing and could have stopped the train after seeing the peril before striking the child, it was error to exclude evidence of:—

(*a*)· The distance between the place of the killing and the point where the engineer first blew the whistle on seeing the child; and

(*b*) Experiments, made at the same place and hour of the day and under like climatic conditions as the killing, tending to show the distance a child of the same size as the one killed could have been seen on the track.

2. SAME.   *Case.*

Case examined and conclusion reached that whether the engineer did see, or under the circumstances should have seen, the child in time to have avoided the injury was for the determination of the jury.

FROM the circuit court of Lauderdale county.

HON. ROBERT F. COCHRAN, Judge.

Harrison, appellant, was plaintiff in the court below; the railway company, appellee, was defendant there. From a judgment in defendant's favor, predicated of a peremptory instruction, the plaintiff appealed to the supreme court.

Appellant's child, sixteen months old, was run over and killed by a passenger train of the appellee. Appellant and his wife and child had, for several weeks prior to the accident, been living in appellee's section house by agreement with the section foreman. The section house was situated on the side of a cut near several other like houses; the ground on which the house was built was fifteen feet higher than the railroad track and had a fence around it. A path led from the premises down into the cut. Appellant was not at home when his child was killed, and his wife, who was at home, being busy with her household duties, had left the child on the front porch, having told a negro workman in the yard to keep an eye on it. The accident occurred about eight o'clock in the morning, the day being rather cloudy. The child, unobserved, wandered onto the track, where it was run over and killed by the train. Appellant claimed that the engineer could and should have seen the child in time to stop the engine, and that between the place the engineer sounded the alarm by blowing his whistle and the place the child was struck the engineer could by the application of emergency brakes have stopped the engine before reaching

the child.   In support of this contention he offered evidence of
experiments made at that place, at the same time of day and
under similar climatic conditions, attempting to show by wit-
nesses the distance at which a child, the same size as the one
killed, could be seen on the track.

Appellant offered to prove by one Price, who saw the ap-
proaching engine, heard the alarm given by the engineer, noted
the place of the approaching train when the whistle was sounded
giving the alarm, rushed to the scene of the accident, and saw
the child lying where it had been struck, that the distance be-
tween the two places was two hundred and thirty five yards;
and plaintiff offered the testimony of experienced railroad en-
gineers to show that a train of cars, such as the one which killed
the child, on a similar track, could be brought to a stop in a
distance of one hundred yards.   All this testimony was on de-
fendant's objection excluded by the court, and a peremptory in-
struction given for the defendant.

The contention of appellee is that the plaintiff, and also the
mother of the child and the negro under whose care the child
had been placed, were guilty of contributory negligence in al-
lowing the child to wander on the track, and that the defendant
railroad company was not guilty of negligence, because the child
was a trespasser and the defendant was under no obligation,
except to refrain from wilfully and wantonly injuring the
child and exercising reasonable care to prevent injury, and be-
cause its presence on the track was not discovered in time to pre-
vent the accident.

*Witherspoon & Witherspoon* and *R. A. Collins,* for appel-
lant.

In determining the admissibility of testimony, the first ques-
tion is whether or not it is relevant to any issue of fact before
the court.   The issue of fact here was whether the engineer
made a reasonable effort to stop his engine after seeing the
child.   On this issue of fact it is clearly relevant to show how
far the engineer must have seen the child and how far he could

have seen it, and it seems that the proof of experiments determining how far other people could see it was at least of some probative value to show how far the engineer could have seen it. This evidence being relevant, it is incumbent on the party claiming that it is inadmissible to show some rule of evidence under which it is excluded, for all relevant evidence is admissible unless there is a reason for excluding, embodied in some positive rule. Rules of evidence are rules of exclusion. The only case in which it would seem possible to us that these experiments were irrelevant would be when the circumstances and surroundings were so different from those under which the accident happened that their result would be misleading, but the experiments which the appellant sought to have his witnesses testify about were made under exactly the same conditions as those under which the accident occurred. The only difference in the surroundings and conditions of the experimenters and those of the engineer was that the engineer was lifted a good many feet above the track and for that reason could see the child at a greater distance. But, however that may be, the witnesses of appellant in testifying as to these experiments were subject to cross-examination and the attorneys for the railroad had ample opportunity to diminish the value of their testimony by drawing out any differences between their situation and that of the engineer, which might enable them to see the child further than the engineer could see it on the day of the accident. Any difference could also have been commented upon by counsel for the railroad company in argument to the jury. In these ways any danger of misleading the jury would be avoided.

Greenleaf on Evidence, (16 ed.), by Wigmore, pronounces on this point as follows: (sec. 14 v. p. 89.)

"On the same general principle—i. e. the use of mental impressions as indicating the nature of a material object—the impressions of other persons (usually obtained by experiment) as to whether a thing could be seen, heard, or identified under given circumstances of time, place, and other surroundings, has

usually been received. Whether a distance is capable of being traversed in a given time, or a locomotive capable of being stopped by the engineer, or any other thing capable of being done by a human being, may properly be evidenced by the experience of the same or other persons under similar condition." (Citing cases.)

In reply to a possible objection that the experiments were *ex parte* (same book, p. 275).

"It has of late been objected in several instances that an examination of a place or person, or an experiment tried, or a diagram made, by a witness *ex parte,* i. e. without notice to the opponent, is improper, and renders testimony based upon it inadmissible. This of course is a misunderstanding of the hearsay rule and the principle of confrontation. The witness afterwards testifies in court, subject to cross-examination, and testimony thus given cannot be thought of as *ex parte.* The objection has always been repudiated." *Burg* v. *Chicago, R. I. & P. Ry. Co.,* 57 N. W., 683; *Nosler* v. *Chicago B. Q. Ry. Co.* (Iowa), 34 N. W., 850; *Brooke* v. *Chicago, etc., R. Co.,* 47 N. W., 75.

The question of whether the engineer was negligent or not of course depends upon whether he saw the baby or could by the use of reasonable care have seen the baby in time to avoid running over it. Bearing on this question, the record discloses the following facts: It is uncontroverted that the track over which the engine came was straight for a distance of two miles. All the witnesses testified to this fact and there was no obstruction whatever to prevent the engineer discovering the baby as far as eyes could see. The spaces between the cross-ties were filled with slag and there was nothing behind which the baby could hide. A glance at the photograph sent up with the record is convincing on this point.

The accident happened in the day time at eight o'clock in the morning and although early in the morning it had been cloudy and according to one of the witnesses it had misted rain a little, the testimony is that at the time of the accident it had cleared off and the sun was shining brightly. Appellant testified that

he could see the child on the track on this day a quarter of a mile from the direction that the train came. This testimony was admitted without objection.

Price also testified that he was a quarter of a mile from where the child was killed when the accident happened and from where he was he could have seen the child at the depot where it was killed.

Two engineers, one of twenty-eight years experience, the other of twenty years, say that by the use of the emergency brakes the engineer could have stopped the train in one hundred yards. They say that they went to the place where the child was killed and examined the track and that the train which killed the child moving up the grade over which it came, could have been stopped in one hundred yards.

The engineer did not make any effort whatever to stop the train until just as the child was struck. In other words, he waited while the train was running a quarter of a mile after he saw the child before putting on the brakes. While there is no absolute proof that he saw the child at that distance, the fact that his proper place was at the window of his engine looking out ahead; the fact that he was at the time just passing the town of Toomsuba and had not yet passed the houses on the outskirts of the village and running at the speed of thirty-five miles an hour so that he ought to have been on the look-out; and the further fact that there is no testimony in the record to show that he was not on the look-out; and the fact that when he reached a point two hundred and thirty-five yards from the baby he was on the lookout and did see it at that point, as is evidenced by his blowing the distress signal; all these facts taken together would justify a jury in finding that the engineer did actually see the child as far as he could have seen it had he been watching. *Jamison* v. *Illinois, etc., R. R. Co.,* 63 Miss., 33

*Bozeman & Fewell,* for appellee.

The child in this case, the victim of this distressing accident, was a mere baby, and the negligence of its parents and custodian in permitting it to wander unattended upon so dangerous a place.

as the main line of a railroad, where fast trains were constantly passing, was such negligence as will preclude them from recovery even though the defendant may have been negligent itself in inflicting the injury.

"The rule of sense and justice is that if negligence cannot be attributed to a child on account of its incapacity to appreciate danger, or want of discretion to avoid it, then it is the duty of the parent to use all reasonable care to protect him from impending peril; and failure of the parent to do so, contributing to the death of the child, will bar the parents' right of recovery for such killing. The negligence of the child is imputed to the parent." 1 Thompson Negligence, § 333. *Westerberg* v. *K. C. K. & R. Co.,* 142 Pa. St., 471, 21 Atl., 878; *Mobile, etc., R. Co.* v. *Watly,* 69 Miss., 145, 13 South., 825.

The child in this case was a trespasser technically. The company had a right at the place of the accident to a clear track, and was under no legal obligation to keep a lookout at this place for either an infant or an adult; and the measure of the defendant's liability was this and no more; that when the danger to the child was discovered, it should use all reasonable effort to avert it. *Railroad Co.* v. *Watly,* 69 Miss., 145, 13 South., 825; *Railroad Co.* v. *Williams,* 69 Miss., 635, 12 South., 957.

The undisputed testimony shows that before striking the child the alarm whistle was blown and the emergency brakes applied, and that the train stopped only a few yards beyond where the child was struck. This shows that the engineer used every reasonable effort to avert this sad accident as soon as he discovered the child and its peril.

*Catchings & Catchings,* on the same side.

1. At the time of the accident the child was a trespasser on the track of appellee.

2. The parents of the child, or those in whose custody it had been placed by its parents, were guilty of contributory negligence in permitting the child to wander onto the railroad track, and this contributory negligence will be imputed to the plaintiff in this suit.

3. The child being a trespasser and being guilty of contributory negligence as above stated, appellee owed it no duty except to abstain from wilfully and wantonly injuring it, or at least to use reasonable care to keep from injuring it after its dangerous position was discovered.

4. The evidence fails to show that the child's danger was discovered in time to prevent the accident by the exercise of reasonable care.

5. The evidence as to the "experiments" made by appellant was properly excluded.

1. Although some confusion exists in the adjudicated cases as to whether an infant of tender years can be a trespasser in the full sense of the term, the vast weight of authority is to the effect that such an infant can so conduct itself as to relieve third persons of any obligation towards it except those owing to trespassers. In other words, whether or not a child is old enough to be a trespasser in the sense that it can be guilty of contributory negligence is a wholly different question from whether or not, by reason of its action, a third person owes it any duty whatsoever.

In the case at bar we concede, of course, that the sixteen months old child of appellant could not itself be guilty of contributory negligence, but appellee owed it no greater duty by reason of its tender years, than it would have owed to a person *sui generis,* at least in so far as concerns the obligation to discover its presence on the track. This distinction is well noted by Judge Lurton in the case of *Felton* v. *Aubrey,* 74 Fed., 350.

In the case at bar, although the child was incapable of contributory negligence, its immaturity could not, in any way change the obligation resting upon appellant as to keeping a lookout for persons on its track. No higher duty rested upon it to discover children on its track than to discover adults. After a human being is in fact discovered on the track of a railroad, its duty varies somewhat in the case of a child from that owing in the case of an adult, but, as we have said, the duty to keep a lookout is precisely the same in both cases. *Moore*

v. *Railroad Co.*, 99 Pa. St., 301; *Rodgers* v. *Lees,* 21 Atl., 399; *McMullen* v. *Pennsylvania Ry. Co.,* 132 Pa. St., 107; *Malone* v. *B. & A. R. Co., 4* N. Y. Supp., 590; *Railway Co.* v. *Clark,* 41 Ill. App., 343.

2. The courts of this country have adopted various rules as to the contributory negligence of infants of tender age. Some courts have held that while the infant itself is incapable of contributory negligence, the negligence of its parents or those in *loco parentis* will be imputed to it in a suit brought either in its own name or in that of its parents. Other courts have held that in no case will the negligence of the parent be imputed to the child, while others have held that such imputation of negligence will only arise in a suit brought by the parent on account of the injuries to the child.

This court is, and for a long time has been committed to the view last mentioned. *Railway Company* v. *Hirsch,* 69 Miss., 126, 13 South., 244; *Railway Co.* v. *Lowe,* 73 Miss., 203, 19 South., 96; *Schlenks* v. *Railway Co.,* 23 S. W., 589; *Bamberger* v. *Railway Co.,* 95 Tenn., 18.

We are not disposed to attempt to draw any fine distinction as to those duties, but will concede that as soon as the danger of the child was discovered appellee's servants in charge of the train were bound to use all reasonable care to avoid injuring it. This, we think, is the settled law in this state, although, as pointed out in the brief of counsel for appellant, this court has sometimes said that the duty owing to a trespasser or one guilty of contributory negligence is merely to abstain from wilfully and wantonly injuring him. It is unnecessary therefore to discuss the cases of *Jamison* v. *Railroad Co.,* 63 Miss., 33; *Railroad Co.* v. *Watly,* 69 Miss., 145, 13 South., 825; *Railway Co.* v. *Williams,* 69 Miss., 631, 12 South., 957.

WHITFIELD, C. J., delivered the opinion of the court.

The court below erred in excluding the testimony of Price. It was competent to go to the jury for whatever they might think it worth. The court also erred in excluding the testi-

mony of the witnesses of the appellant with respect to the experiments made as to how far the baby could be seen from the direction from which the train came. This testimony was clearly competent. The purpose of the inquiry was to show whether the engineer saw, or ought to have seen, the child in order to have avoided the catastrophe, and it was directly relevant to that inquiry. The experiments were made on the same kind of a day as that on which the injury occurred, at the same hour of the day, and under like conditions in every respect, and we fail to see any sound reason which can support the exclusion of the testimony taken under circumstances identical, or nearly identical, with those obtaining on the day the injury was inflicted. See Greenleaf on Evidence (16th ed.), p. 89, § 14; Id., p. 275; *Burg* v. *C., R. I. & P. R. R. Co.,* 90 Iowa, 106, 57 N. W., 683, 48 Am. St. Rep., 419; *Nosler* v. *C., B. & Q. Ry. Co.,* 73 Iowa, 268, 34 N. W., 850; *Brooke* v. *C., R. I. & P. R. R. Co.,* 81 Iowa, 504, 47 N. W., 76; *C., St. L. & P. R. Co.* v. *Champion* (Ind.), 32 N. E., 874, 23 L. R. A., 861. The question for solution in this case is whether the engineer did see, or under the circumstances ought to have seen, the child in time to have avoided the injury, and this testimony was valuable in the solution of that question. The case was one which, on its facts, ought to have been solved by the jury.

*Reversed and remanded.*