NEW ORLEANS, MOBILE & CHICAGO RAILROAD CO. *v.* B. P. HARRISON, ET AL.

[61 South. 655.]

1. RAILROADS. *Duty to trespassers. Lookout. Liability of company. Sufficiency of evidence.*

A railroad company owes no duty to a trespasser on its track except not to wilfully injure him after he is seen, and it is not its duty to keep a lookout for trespassers on its track.

2. RAILROADS. *Injuries to trespassers. Sufficiency of evidence.*

Where in a suit against a railroad company for the negligent killing of a trespasser on its tracks, the engineer testified that he was on the lookout at the time of the killing but only saw the deceased when about seventy-five yards from the point of the killing, and that then he did all he could to stop the train, but it was impossible to do so before striking deceased; but it was shown that at that point the track was straight and there was no reason why deceased could not have been seen in time for the train to stop before striking deceased, a verdict for the plaintiff will not be disturbed as circumstances are often as potent as the evidence of eyewitnesses.

APPEAL from the circuit court of Neshoba county.
HON. C. L. DOBBS, Judge.

Suit by B. P. Harrison and others against the New Orleans, Mobile & Chicago Railroad Company. From a judgment for plaintiffs, defendant appeals.

The facts are fully stated in the opinion of the court.

*Flowers, Alexander & Whitfield* and *J. T. Brown,* for appellant.

*G. E. Wilson,* for appellee.

No brief of counsel on either side found in the record.

COOK, J., delivered the opinion of the court.

This is an appeal from the judgment of the circuit court of Neshoba county, awarding appellee damages for the alleged negligent killing of H. M. Harrison. The train which killed deceased was southbound, and from the point where deceased was killed to a point about one mile north the track was straight and the view unobstructed. Just how the killing occurred was related by the engineer and fireman of the locomotive. The engineer testified that he was on the lookout all the time, and that he did not discover deceased's peril until he was about seventy-five yards from him, and that when he did discover his peril he applied the emergency brakes, opened the sandcocks, reversed the engine, and sounded the cattle alarm; in short, he did everything possible to prevent the accident. In this the engineer was corroborated by the fireman.

Plaintiff introduced several witnesses, who testified that they had made experiments on the ground, to ascertain how far deceased could have been seen, lying on the ground between the rails, as the engineer said he was at the time he was run over and killed. These witnesses agreed that, standing on the ground, the deceased could have been seen, and a man lying on the ground at the spot where deceased was placed by the engineer was seen and recognized by them, as a man, while they were two hundred yards from the scene of the tragedy. Undoubtedly, deceased was a trespasser, and was also unconscious at the time he was killed. The testimony warrants the in-

ference that he was in a drunken stupor, asleep on the railroad track.

By a long line of decisions this court has held to the doctrine that the railroad owes *no* duty to a trespasser until his peril is discovered; that, as to trespassers, it is not the duty to keep a lookout. If there is any principle of law settled by this court, it is that principle. As a corollary to this well-settled rule is the further rule that the railroad company must not wantonly or willfully injure a trespasser upon its tracks. These two rules are reasonable and just, and are not applicable to railroads alone, but measure the liability of everybody similarly situated. In this case the engineer testified that he was on the lookout for obstructions, but that he did not see and identify deceased until it was too late to prevent the accident. The evidence of others tends to show that if the engineer was on the lookout, as he said he was, he was obliged to have seen deceased at least two hundred yards away. This evidence was submitted to a jury, and they must have disbelieved the engineer; else their verdict was in the face of the rules above announced.

The evidence of witnesses for plaintiff certainly justified the belief that the engineer was not looking ahead; but this alone would impose no liability upon the company, as it owed no duty to plaintiff to keep a lookout. Did this evidence warrant the jury in rejecting the evidence of the engineer entirely, which, if done, would leave the killing unexplained? In our examination of the authorities, we find two cases decided by this court, which discuss the competency and value of evidence of this kind. The first case is *Railroad Co.* v. *Hawkins,* 82 Miss. 209, 34 South. 323. In that case the engineer, as in this case, testified that he was on the lookout and did not see the men and dogs, and there was no evidence to contradict his statement, unless the admitted facts did so. In this state of the case, the jury rendered a verdict for plaintiff, and upon appeal Judge CALHOON, speaking for the

court, said: "If the engineer was on the lookout, as he
says he was, in coming around a curve debouching into a
cut, he must have seen the men and dogs. The jury man-
ifestly thought either that he did see them, or should
have seen them by proper lookout, in entering so danger-
ous a piece of road. There is no pretense that he was en-
gaged about his engine. One toot of his whistle would,
in all probability, have prevented the damage. From the
evidence the jury must have thought that he did see, and
in that case the carelessness was 'so gross as to be tanta-
mount to design.'" In *Harrison* v. *Railway Co.*, 93 Miss.
40, 46 South. 408, WHITFIELD, C. J., winding up the opin-
ion of the court, employed this language: "The ques-
tion for solution in this case is whether the engineer did
see, *or under the circumstances ought to have seen,* the
child in time to have avoided the injury, and this testi-
mony was valuable in the solution of *that question.*" The
italicized words are ours. Both of these cases are quoted
with approval in the case of *Fuller* v. *I. C. R. R. Co.*, 56
South. 783.

In *Railroad Co.* v. *Hawkins,* as in this case, the engi-
neer testified that he was on the lookout, but nevertheless
he did not see the men and dogs. It will be observed what
this court said in commenting on the engineer's testi-
mony and its probative value. In *Harrison* v. *Railroad
Co., supra,* the court had under consideration the trial
court's refusal to permit plaintiff to show by expert wit-
nesses, who had made experiments to demonstrate that,
taking the place where the engineer sounded the alarm
and the place where the child was struck, the engineer
could, by the application of the emergency brakes, have
stopped the engine before reaching the child.

Appellant offered to prove by one Price, who saw the
approaching engine, heard the alarm given by the engi-
neer, noted the place of the approaching train when the
whistle was sounded, giving the alarm, rushed to the
scene of the accident, and saw the child lying where it

had been struck, that the distance between the two places was two hundred and thirty-five yards; and plaintiff offered the testimony of experienced railroad engineers to show that a train of cars, such as the one which killed the child, on a similar track, could be brought to a stop in a distance of one hundred yards. All of this testimony was on defendant's objection, excluded by the court, and a peremptory instruction given for defendant.

In this case, we gather from the record that the engineer in charge of the train did not testify. If this be true, there can be no question that the trial court erred in excluding this evidence, because, beyond question, in that state of the record the evidence was pertinent to show that the engineer willfully and wantonly failed in his duty. He must have seen the child in time to prevent the injury, and, having failed to do those things necessary to accomplish this result, his conduct was such as to have warranted a belief that he wantonly killed the baby.

In the instant case, as in *Railroad Co.* v. *Hawkins, supra,* the engineer was emphatic in his statement that his eyes were upon the track from the time he got in one mile of the place of the killing; that he did not and could not distinguish the object on the track, and did not have any reason to believe that it was a human being until he was so close upon it that it was impossible to do anything to avert the injury.

We repeat, the jury must have believed that the engineer was falsifying; but did this authorize them to render a verdict against the defendant? Under the circumstances, with the engineer's testimony disposed of as unworthy of belief, nothing remained to explain the killing —the burden of proof placed upon the defendant by the statute was not met. It makes no difference that deceased was a trespasser. He was killed by the locomotive, and, unless the engineer's and fireman's testimony accounts for the killing, there is no evidence showing how it came about.

The jury could not arbitrarily reject ·the testimony; but, if there was other testimony warranting a belief that the story of the engineer and fireman was manufactured, we are bound to conclude that the jury did not act arbitrarily.   Circumstances are often as potent as the evidence of eyewitnesses, and the two cases from this court, which we have discussed, seem to illustrate the principle as applicable to situations strikingly similar to the facts of the instant case.

This appears to be a hard case, because of the manifest negligence of deceased.   Looking at the whole case, it is frequently a temptation to take from the jury that which our system confides to it alone.

After a careful examination of all of the evidence, we are constrained to hold that this case must be affirmed.

*Affirmed.*