DONE *v.* STATE.

(Division B. October 13, 1947.)

[32 So. (2d) 206. No. 36593.]

**Everett & Sanders** and **J. M. Forman**, all of Indianola, for appellant.

**Greek L. Rice**, Attorney General, by **Geo. H. Ethridge**, Assistant Attorney General, for appellee.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

Appellant was indicted by the grand jury of Sunflower County for the murder of his wife, Bertha. The jury brought in a verdict of guilty, but disagreed as to the punishment, wereupon he was sentenced to the penitentiary for life.

Appellant then filed a motion for a new trial on several grounds, among them: "The court erred in overruling the motion of the defendant to exclude the whole evidence when the state and defendant had rested, such evidence not showing guilt of the defendant beyond a reasonable

doubt;" and, also, the additional ground that the court refused his request for a peremptory instruction. Here, the same two grounds, along with others, are assigned as errors. In view of the conclusion we have reached, it is necessary to consider only the two alleged errors, and one other to which reference will be further made, post.

Appellant and the deceased, his wife, were married during the war while he was at home on a furlough. To this union one child was born. When the unfortunate events of this case took place he had been discharged from the Army, and he and his wife and child resided with his brother-in-law in the same house at Leland. On the Saturday morning preceding the tragedy, which occurred early the next morning, which was Sunday, all of the household left home for various reasons; and appellant testified "That morning everybody was leaving the house and the pistol was lying around there and I picked it up and put it in the pocket of the car." It was an old 38 Smith & Wesson revolver. The car was an old model Plymouth, belonging to his father, and the "pocket," or glove compartment, was fastened by a makeshift arrangement of pasteboard.

All through their married life a genuine affection existed between appellant and his wife and characterized their relations with each other. On this occasion, he was taking his father to an oculist at Greenwood, and so he took his wife to visit her father at Heathman, and she was to return home about 3:30 Saturday afternoon, when he anticipated he himself could return. Upon his return, however, he ascertained his wife was still absent. He drove to Indianola about seven o'clock Saturday night with his brother-in-law, and later drove out to the home of his father-in-law, where his wife and baby had both retired. Upon inquiry, he was directed to the bedroom, and there he and his wife had some conversation not audible to the other members of the family of his father-in-law gathered there. However, she dressed and came where they and her husband were, and some words were

exchanged between them as to her failure to return home at 3:30. Appellant claims to have told her she could, if she so desired, remain there the rest of the night, and he would stay at his father's. It seems that Bertha's father had a large family. However, she elected to depart with appellant some time after twelve o'clock. They left the baby with the grandparent, intending to return for it the next morning. The night was cold.

On the way home, appellant said his wife was sitting on the right side of the car, to his right, while he was driving. She went to sleep, and he was going not over forty-five miles an hour, when unexpectedly some cows were coming up the road. Quickly he sought to avoid them and "stopped on the banks and whipped off to the side of the ditch." While he was watching the cows, his wife was thrown against the windshield, and after he had gone down into a shallow ditch alongside the road, he heard a shot. His wife exclaimed that she had been shot and asked to be taken to the hospital. Appellant immediately took her to the hospital, and a doctor was summoned. Deceased was conscious for thirty or forty minutes after reaching the hospital, and never once made any accusation against her husband. According to his explanation the defective fastening of the glove compartment had burst open in the sudden emergency movement of the car, the pistol had fallen out and shot Bertha in her inclined position from the seat against the front part of the car. Appellant's wife died within two or three days, never recovering consciousness after the lapse of the first forty minutes from her entry into the hospital.

The doctor testified that his examination of the deceased disclosed that she was shot a little outside the nipple line on the left side about a quarter of an inch above it, and the bullet lodged in her left shoulder. This testimony by the attending physician lends corroboration to appellant's description of the circumstances of an accidental shooting; which is also strengthened by the practical impossibility of his inflicting such a wound, as she

sustained, in their relative positions in the car. His description of the occurrence gains additional credibility from the fact that he immediately carried her straight to the hospital and procured medical treatment—hardly the action of a guilty man, as, upon recovery, she would become a witness against him, and who, in face of impending death, could have made a dying statement of his guilt.

The next morning he told the sheriff, and also his father-in-law, what has been detailed, supra. Without having been arrested, he willingly accompanied the sheriff to the scene of the tragedy, where, upon being unable to find tracks in the depression, confirming that part of appellant's narrative, the sheriff arrested appellant for the murder of his wife. The sheriff's car left tire tracks in the ditch; other tracks were found nearby on the shoulder of the road, but none below it. Appellant said he was excited at the time, and that his car was lighter than that of the sheriff.

The State relied largely upon this failure of the appellant to point out tracks of his car; and upon a test made by the sheriff with his own pistol (not the appellant's) of the same caliber and make as an experiment to determine effect of various distances as to powder burns. The test was not made under identical conditions, or even under reasonably comparable circumstances. Futhermore, the tests to which the sheriff testified were made with a towel nailed to a tree, and with a different pistol. It will be seen that they were not "so nearly the same" (as the conditions of the actual shooting in the car) "in substantial particulars as to afford a fair comparison in respect to the particular issue to which the tests are directed." Brown v. State, 176 Miss. 448, 169 So. 837, 838. As was said in Harrison v. Southern Railway Co., 93 Miss. 40, 46 So. 408, 410, the experiments there were made "under like conditions in every respect, and we fail to see any sound reason which can support the exclusion of the testimony taken under circumstances identical, or nearly identical, with those obtaining on the day the injury was

inflicted.'' That was not so here. Appellant's objection to this evidence should have been sustained, and we sustain the assignment of error embodying it here. We do not regard it, therefore, in our consideration of the case.

The State also relied upon testimony of the father-in-law's family that, when deceased had the conversation about her failure to return home on the 3:30 bus Saturday evening, appellant was angry. As one of them put it, because "a frown was in his forehead then.'' This same witness, a brother of deceased, also testified that appellant had been drinking on Saturday, and that on Sunday afternoon, after appellant had given the foregoing version of the accident to both the sheriff and her father, and had voluntarily offered to show, and had shown, the sheriff where it occurred, further testified that appellant told him he had had a flat tire, the pistol dropped out of his pocket and his wife was thus shot. Truly, it requires no powers of divination to discern the absurdity of such testimony, by this brother of deceased, to such a tale.

Appellant denied this man's testimony altogether. The question here is, does the State produce enough evidence of the guilt of appellant on the charge of murdering his wife, in view of the fact that he and she were the only eye-witnesses, and his narrative of the facts recited by him from the witness stand? The answer to this question requires further discussion.

She was conscious forty minutes after reaching the hospital and never reproached or made any accusation whatever against her husband, which is reflected in the record. The story of the husband is not substantially challenged or unreasonable and, is not contradicted by the physical facts. Rather, it is supported by them, except for the one negative bit of evidence that the sheriff found no car tracks in the depression alongside the road. We think this too little to justify convicting appellant of murder. Hunt v. State, 108 Miss. 588, 67 So. 57; Houston v. State, 117 Miss. 311, 78 So. 182; Patty v. State, 126 Miss. 94, 88 So. 498; Wesley v. State, 153 Miss. 357, 120 So. 918;

Walters v. State, 153 Miss. 709, 122 So. 189; Gray v. State, 158 Miss. 266, 130 So. 150; Weathersby v. State, 165 Miss. 207, 147 So. 481.

In the case of Hunt v. State, supra [108 Miss. 588, 67 So. 57], we have an analogous case in its material aspects, but much stronger against the defendant there than here. There, too, the only witness to the killing was the appellant himself, and there the husband·(charged with killing his wife) and his wife had actually had a violent quarrel just before her slaying. However, we reversed the judgment of conviction and discharged the appellant. We said: ''We have carefully gone over all the evidence in this case, and we can find no single circumstance that points to the defendant's guilt with that degree of certainty which the law demands. Taking all the circumstances together, there is no legal proof of guilt. The most that can be said for the state's case is that there were some suspicious circumstances proven against the defendant.''

The State relies upon such cases as Durr v. State, 175 Miss. 797, 168 So. 65, and Bennett v. State, 152 Miss. 728, 120 So. 837, 838, dealing with presumptions from the use of deadly weapons in homicide cases. Where the facts are fully proven, presumptions yield to such facts in criminal cases, as well as in civil cases, and those cases are not in point here in view of the detailed evidence as to the facts of the death, as shown by the record. In the Bennett case, we said: ''If the facts relied upon to change such presumption are unreasonable and improbable, or if they are contradicted by physical facts and circumstances in evidence, then the jury may find a verdict either of murder or manslaughter, according to the circumstances and facts in evidence.''

In the case at bar, we are of the opinion that the testimony of appellant, the sole eye-witness, was not unreasonable, was not contradicted as to the circumstances of the actual slaying by the physical facts or by any witness, and is not improbable in itself; and was corroborated in

many substantial and material respects. Therefore, as reluctant as we are to reverse the verdict of a jury on the facts, we feel that we have no other alternative here.

Th judgment of the circuit court is reversed, and the appellant discharged.

Reversed and appellant discharged.