DICKERSON, et al. *v.*
ILLINOIS CENTRAL RAILROAD COMPANY, et al.

No. 42411 November 5, 1962 145 So. 2d 913

734

*Pierce & Waller,* Jackson; *Chatwin M. Jackson, Jr.,* Kosciusko, for appellants.

*Odom, Odom & Pittman,* Greenwood; *J. H. Wright, W. F. Cerne, John W. Freels,* Chicago, Illinois, for appellee.

Kyle, J.

This case is before us on appeal by Mrs. Faye Fortenberry Dickerson, surviving widow, and Floyd Dickerson and Theresa Dickerson, minor children of Lloyd Delmar Dickerson, deceased, complainants in the court below, from a decree of the Chancery Court of Carroll County dismissing, after a hearing upon its merits, the bill of complaint filed by the appellants against the

Illinois Central Railroad Company, a nonresident corporation, H. Bowen, locomotive engineer, and H. B. Caldwell, Jr., a resident agent of the railroad company, as defendants, for the recovery of damages under the Mississippi wrongful death statute for the death of Lloyd Delmar Dickerson, who was struck and killed by the running of one of the corporate defendant's north-bound passenger trains, known as the Panama Limited, on August 13, 1960, at a point on or near a railroad crossing known as Harper's Crossing, about two and one-half miles north of Crystal Springs, in Copiah County, Mississippi.

The complainants filed their bill of complaint on March 10, 1961. The complainants alleged in their bill that the deceased was struck and killed by the defendant railroad company's train on the date and at the point on the defendants' railroad track mentioned above as a direct and proximate result of the negligence of the defendant railroad company's engineer, H. Bowen, and other servants and employees of the railroad company in charge of the train. The complainants alleged that the defendant railroad company's tracks, at the point where Dickerson was killed and immediately south thereof, were straight for a distance of more than a mile; that beginning at a point about 200 feet south of Harper's Crossing the defendant railroad company's tracks ran southwardly through a deep cut for a distance of approximately one mile, which tended to mute the noise caused by the running of the defendant railroad company's train, and that fact was known to the defendant railroad company and its employees in charge of its train, or should have been known to them by the exercise of reasonable care; that under the circumstances thus stated it became and was the duty of the defendant railroad company and its engineer to give warning of the approach of the train by causing the bell on the locomotive pulling the train to be rung and the whistle or

horn thereon to be blown at least 300 yards before reaching Harper's Crossing, as required by Section 7777, Mississippi Code of 1942, Rec.; that the defendant railroad company and its engineer failed to give such warning; and that the failure to give such warning constituted negligence on the part of the defendant railroad company and its engineer.

The complainants further alleged that the servants and employees of the defendant railroad company in charge of the train, including the defendant engineer, had a clear and unobstructed view of the railroad tracks and right of way along said tracks for a great distance, both south and north of the crossing; that on the occasion complained of the servants and employees of the defendant railroad company in charge of the defendant railroad company's train, including the defendant engineer, saw, or by the exercise of reasonable care should have seen, the decedent on the track of the defendant railroad company, and on or about Harper's Crossing, and saw, or by the exercise of reasonable care should have seen, the decedent's position of peril on the railroad track in front of the oncoming fast-moving train; but, notwithstanding these facts, the servants and employees of the defendant railroad company negligently failed to sound any warning of the approach of the train and negligently failed to apply the brakes to the engine and cars so as to reduce the speed of said train or stop the train before striking the decedent; and that the failure to sound such warning and apply the brakes constituted negligence on the part of the defendant railroad company and its engineer. The complainants also alleged that the defendant railroad company was guilty of negligence in employing and placing in charge of the train as the engineer thereof the said H. Bowen, who was a man of advanced age and physically incompetent to operate the train with reasonable safety

to the traveling public; and that the defendant H. Bowen was himself personally negligent in operating the train.

The defendants in their answer denied that they were guilty of the several acts of negligence alleged in the complainants' bill of complaint, and denied that the accident happened at a public crossing; and the defendants alleged that the train was being operated with due care and that the death of the decedent was caused solely by his own gross negligence. By way of affirmative matters of defense the defendants averred that the complainants' decedent was a trespasser upon the right of way of the defendant railroad company at the time of his injury and death; that he was in an intoxicated condition, and while in such intoxicated condition was lying prone and motionless on the railroad right of way with his head on or near a crosstie, and at a place on the right of way apart from any crossing. The defendants further averred that the defendant's train was being operated in a careful and prudent manner by the crew thereof at a lawful and reasonable rate of speed not in excess of 70 miles an hour; that the headlight on the locomotive was burning and proper warnings were given by the engineer of the approaching of the train to Harper's Crossing; that after the discovery of the complainants' decedent by the train crew the train crew exercised proper and due care to prevent the striking of the complainants' decedent by the train, but was powerless to prevent the train from striking the complainants' decedent; and that at no time was the engineer or other members of the train crew guilty of any negligence.

The cause was heard upon its merits at the regular October 1961 term of the chancery court, and at the conclusion of the hearing, the chancellor dictated into the record his findings of fact and his conclusions of law.

The chancellor found that the deceased was a trespasser on the railroad right of way at the time he was struck and killed, and that the deceased, when first seen by the engineer on the railroad right of way, was drunk to the extent that he was unconscious and was lying just east of the crossties about 10 or 15 feet south of Harper's Crossing. The chancellor found that Harper's Crossing was a private crossing serving three families to the west and sometimes, but very seldom, used by other people. The chancellor found that the Panama Limited was running at a rate of speed of 70 miles per hour as it proceeded northwardly toward Harper's Crossing; that the engineer was alert, competent and well prepared to run the train; that the engineer began blowing the whistle of the diesel engine and ringing the bell slightly over 900 feet south of Harper's Crossing; and that the engineer continued to blow the whistle and ring the bell until he had passed over the crossing. The chancellor found that the engineer was keeping a lookout; that he saw what he thought was a paper where the deceased was lying, and when about 240 feet south of the point where the deceased was lying the engineer observed that what he thought was a paper was a human being; and that this was the first time under the facts in the case that the engineer could have seen the deceased placed as he was on the railroad right of way. The chancellor found that it was impossible for the engineer, even though he had applied the emergency brakes, to have stopped the train until after the train had passed the point where the deceased was lying and had passed Harper's Crossing. The chancellor found that the engineer used sound judgment in applying the service brakes only, and that he did everything that he could do to avoid the accident.

The chancellor was of the opinion that the reasonable inference to be drawn from the evidence was that the noise made by the engineer in giving the alarm and

the running of the train caused the deceased to arouse from his drunken condition and straighten up to the extent that the side of the train hit him and carried him north 85 to 100 feet.

The chancellor was of the opinion that the bill of complaint should be dismissed, and a decree was entered accordingly.

The appellants have assigned and argued four points as grounds for reversal of the decree of the lower court, as follows: (1) That the chancellor erred in finding that the railroad company sufficiently explained the killing of the deceased to warrant a decree in its favor; (2) that the chancellor erred in finding as a fact that the deceased was drunk to the extent that he was unconscious and lying just east of the railroad crossties, about 10 or 15 feet south of Harper's Crossing; (3) that the chancellor erred in finding as a fact that the reasonable inference to be drawn from the evidence offered on behalf of the defendants was that the noise made by the engineer in giving the alarm and the running of the train caused the deceased to arouse from his drunken condition and straighten up to the extent that the side of the train hit him and carried him north 85 to 100 feet; and (4) that the chancellor's findings of facts in the case are contrary to the law and against the overwhelming weight of the evidence.

In view of the nature of the points assigned and argued as grounds for reversal of the decree of the lower court it is necessary that we give a brief summary of the testimony of the witnesses.

The first witness who was called to testify by the complainants was H. W. Bowen, the defendant engineer, who was called to testify as an adverse witness. Bowen testified that he was the engineer on the Panama Limited at the time Dickerson was struck and killed, and that he was in the cab alone at the time the accident occurred. He stated that Tom Jackson, the colored fire-

man or helper on the diesel locomotive, was back in the engine room inspecting the machinery so that he could report at Jackson any defects that might be found. Bowen stated that the train left McComb at 6:51 P. M. and was due to arrive at Jackson at 8:00 o'clock. The train was made up of 11 cars not including the engine. The railroad track was a double track all the way from McComb to Jackson, a distance of 78 miles. Dickerson was killed at a point about two miles north of Crystal Springs. The train was running at a rate of speed of about 70 miles per hour. Bowen stated that he first saw the man lying on the railroad right of way on the east side of the track when the engine was about 3-car lengths (240 feet) south of the point where the man was lying. His best judgment was that the man's body was not on the crossties or the rails; he was lying east of the crossties and at right angle to the railroad. Bowen stated that he did not hit the man, and he never saw the man move. Bowen was asked, ''You saw the man on the track?'' His answer was, ''By the side of the track * * * No, he wasn't on the crossties. He was lying on the side of the track, and his head looked like it was right about the end of the crossties.'' Bowen stated that when he saw the man lying there, he applied his brakes fully but was unable to stop the train until after he had passed Harper's Crossing. He stopped the train some distance north of the crossing, and got out of the cab to see what was wrong. He told the conductor what he had seen, and the flagman gave a signal to him to back up. The train did not back up all the way to Harper's Crossing, and no trace of the man was found by the members of the train crew at that time. Bowen stated that the train was equipped with two sets of brakes, an automatic brake for the engine and train, and dependent brakes that took care of the engine. The automatic brake was operated by pulling a lever.

Bowen stated on direct examination by the defendants' attorney that the locomotive he was operating was equipped with standard equipment, including the bell, horn and brakes, and as far as he knew it was in perfect condition. He stated that he sounded the horn on the engine and started the bell to ringing just a little before he got to the whistle post which was located 900 feet south of Harper's Crossing, and that he continued to sound the horn and ring the bell until he was over the crossing. Bowen stated that his health was good, and he had no trouble in making his reflexes respond to his will. He stated that he did not apply the emergency brake when he saw the man lying on the railroad right of way for the reason he knew that he could not stop the train before he got to the point where the man was lying, and he wished to avoid injuring somebody on the train.

Two state highway patrolmen testified as witnesses for the complainants. Patrolman Walter Lee Brent testified that he and Patrolman Floyd Williams went to the scene of the accident around 8:30 o'clock P. M. They found Dickerson's body lying on the railroad right of way 75 or 100 feet north of Harper's Crossing and a few feet north of a small railroad platform or ramp made of crossties. The head was pointed east and the feet toward the west. There was brain matter in two or three spots on the crosstie platform. The body was torn up considerably. Patrolman Williams testified that he found Dickerson's automobile which was located at a point east of State Highway No. 51 and about 40 or 50 feet from the overhead bridge on Highway 27, one-half mile north of Harper's Crossing. There was no road where the car was stuck. The new highway was open for traffic, but was still under construction. There was an old road near by which ran to Georgetown and Monticello. Williams stated that Dickerson's car was off the road about one-half mile south of the

point where Dickerson's body was found. An empty beer can and one full can of beer was found in the car.

Hulon Barron and three other witnesses, who were called to testify for the complainants, testified that they went to the crossing where Dickerson was killed with the complainants' attorney the week before the trial for the purpose of making experiments on the ground to determine how far the deceased could have been seen lying down as the engineer said he was when he was first seen by the engineer. Each of these witnesses testified that he stationed himself on the railroad right of way at a point approximately 1400 feet south of Harper's Crossing, and when the Panama Limited passed he was able to see the plaintiffs' attorney lying on the railroad right of way near the point where Bowen testified the deceased was lying when he first saw him on the railroad right of way.

Excell Nelson testified that he lived on the west side of the railroad tracks at Harper's Crossing. His house faced the railroad tracks. Old U. S. Highway No. 51 ran along the east side of the railroad right of way, and it was necessary for him to cross the railroad tracks to get to the old highway. Three other families used the crossing. There were two stop signs at the crossing. On cross-examination Nelson stated that the railroad tracks at the crossing were about 4½ feet above the ground level, and that it was pretty steep coming up the slope for a distance of approximately 30 feet from the east. Nelson also stated that the road that he lived on ended not more than a quarter of a mile west of the railroad tracks, and that the road served only the three families mentioned above. He said, however, that the road was open and other people could use it if they wished to do so.

Three witnesses, who were called to testify as witnesses for the defendants, testified that they saw Dickerson and talked to him during the early evening only

a short time before he was struck and killed by the moving train and that, in their opinion, he was drunk at the time they saw him. James Ingram, Jr., and Shelby Grubbs testified that they saw Dickerson's automobile stranded in a field about 200 feet south of the overhead bridge and on the east side of the railroad tracks just before sundown, and they saw Dickerson standing by the side of the car. They stopped their car and Dickerson came over to the place where they had stopped and wanted to know if they would help him get out of a ditch. Ingram had his wife and his mother-in-law in the car with him and he told Dickerson that he could not help him at that time, but he would try to find someone to help him, and if not, he would get his brother-in-law's tractor and come back and pull him out later. Ingram asked Dickerson how he got in the ditch. Dickerson could not tell him very well how he got in there. Ingram and Grubbs both testified that in their opinion Dickerson was drunk when they saw him at the overhead bridge.

Ingram testified that he and his brother-in-law later went back to the place where Dickerson's car was stranded to pull Dickerson out of the ditch, but they did not find Dickerson there. Ingram then came back to his own truck just off the overhead bridge, and while he was standing there the Panama Limited passed. Ingram heard the train give its signals as it passed under the bridge. He then got in his pickup truck and started to leave, but he saw the train come to a stop at a point above Harper's Crossing, and he drove northward to the point where the train had stopped. The conductor told him that he thought they had hit a man, and the conductor requested that Ingram and his brother-in-law help look for the man who had been hit. They learned a few minutes later that Dickerson's body had been found on the railroad right of way just north of the ramp.

Woodrow Sherman, who lived a short distance north of the overhead bridge, testified that a man whom he did not recognize at the time came to his back door after 6 o'clock P. M. on the day that Dickerson was killed and told him that he was in a ditch and wanted help, that he had "slipped off the road." Sherman stated that the man tried to talk, but did not act normal —"I would say that he was drunk. * * * all I know, he didn't act rational. There was something wrong with him."

Several pictures of the surrounding area were introduced in evidence by agreement of the parties to show the topography of the landscape along the route of the railroad tracks south of Harper's Crossing and north of the overpass on Highway No. 27, and to show the topography and condition of the roadbed and the railroad embankment at Harper's Crossing, and the elevation of the railroad embankment in the immediate vicinity of the crossing.

■■■ The first point argued by the appellants' attorneys as ground for reversal of the judgment of the lower court is that the trial court erred in finding that the railroad company sufficiently explained the killing of the deceased to warrant a decree in its favor. It is contended that the testimony of the engineer did not account for the killing of the deceased; that there was no evidence showing how Dickerson's death came about, except that he was killed by the running of the passenger train of the defendant railroad company; and that under the prima facie statute, Section 1741, Miss. Code of 1942, Rec., the complainants were entitled to a decree awarding damages to them.

■■■ But we think there is no merit in that contention. The evidence shows without dispute that Dickerson was a trespasser on the railroad right of way at the time he was killed; and there is ample evidence in the record to support the chancellor's finding that

the deceased was drunk to the extent that he was unconscious at the time he was struck and killed by the defendant railroad company's train. The chancellor as the trier of the facts had a right to accept as true the engineer's testimony that he saw the deceased for the first time when he was only about 240 feet from the point where the deceased was lying; and this Court cannot say that the chancellor was manifestly wrong in his finding that this was the first time the engineer could have seen the deceased placed as he was on the railroad right of way.

 This Court has repeatedly held that the servants of a railroad company in charge of its train are under no duty to keep a lookout for trespassers on the railroad track, and are required only to exercise reasonable care to prevent injuring such trespasser after they have discovered and realized his peril. Yazoo & M. V. R. Co. v. Smith, 111 Miss. 471, 71 So. 752; Yazoo M. V. R. Co. v. Huff, 111 Miss. 486, 71 So. 757; Mobile & O. R. Co. v. Robinson, 132 Miss. 841, 96 So. 749; Murray v. Louisville & Nashville R. Co., 168 Miss. 513, 151 So. 913. In Yazoo & M. V. R. Co. v. Smith, supra, the Court said: "As a general rule, a railroad company is entitled to a clear track, owes no obligation to keep a lookout for trespassers, and is required only to refrain from injuring trespassers after their position of peril is discovered."

 Proof of the fact that Dickerson was killed by the running of the train of the defendant railroad company at the time and place shown by the evidence was prima facie proof of negligence authorizing a recovery by the complainants. Section 1741, Miss. Code of 1942, Rec. To overcome this statutory presumption, it devolved upon the defendant railroad company to exculpate itself by establishing to the satisfaction of the chancellor as the trier of the facts such circumstances of excuse as would relieve it from liability. New Orleans

& Northeastern R. R. Co. v. Brooks, 85 Miss. 269, 38 So. 41. To do this it was not absolutely necessary that eyewitnesses be produced to testify that they saw the accident in any or all of its details; but the facts relied on to overcome the statutory presumption could be proved in whole or in part by circumstances. In other words the prima facie presumption created by the statute can be overcome by circumstantial evidence; but such evidence must be convincing, full and complete. Alabama Great So. R. R. Co. v. Hunnicutt, 98 Miss. 273, 53 So. 617.

It clearly appears from the testimony of the defendant engineer in this case that the train and its appliances were in good order; and that the statutory warning signals required by Section 7777, Miss. Code of 1942, Rec., were given. The engineer testified that he did not see the deceased on the railroad right of way until he was approximately 240 feet from the point where the deceased was lying just east of the crossties, and that he applied his brakes fully as soon as he saw the man lying on the right of way and brought the train to a stop at a point north of Harper's Crossing. We think the proof of the facts and circumstances disclosed by the testimony of the engineer and the defendants' other witnesses which the chancellor accepted as true, was sufficient to overcome the statutory presumption of negligence. Mobile & Ohio R. Co. v. Robinson, supra; Murray v. Louisville & Nashville R. Co., supra; Taylor v. Illinois Cent. R. Co., 200 Miss. 571, 27 So. 2d 894; Smith v. Illinois Cent. R. Co., 214 Miss. 293, 58 So. 2d 812.

The appellants' attorneys have cited in support of their contention, that under the showing made by the defendant railroad company the complainants were entitled to a decree, the cases of New Orleans, Mobile & Chicago R. Co. v. Harrison, 105 Miss. 18, 61 So. 655; Harrison v. Southern Ry Co., 93 Miss. 40, 46 So. 408;

and Kansas City, Memphis & Birmingham R. Co. v. Hawkins, 82 Miss. 209, 34 So. 323. But the facts in each of those cases were entirely unlike the facts in the case that we have before us on this appeal, and in none of those cases did the court hold that the plaintiff was entitled to a directed verdict under the prima facie statute.

It is next argued that the court should not have arbitrarily rejected the testimony of the four witnesses of the appellant who testified concerning the experiments made by them during the week before the trial for the purpose of determining how far a man, lying where the deceased was lying when the train approached the crossing, could be seen from the direction from which the train was coming. But we think the chancellor did not reject that testimony arbitarily. The testimony was competent and was properly admitted and considered by the chancellor as testimony offered to discredit the testimony of the defendant engineer, who had stated that he did not see the deceased until he was only 240 feet from him. But the weight to be given to the testimony was a matter for the chancellor to determine after considering the same along with the other testimony in the record. In the case of Yazoo & M. V. R. Co. v. Huff, 111 Miss. 48, 71 So. 757, which was in action for damages for the death of a small child on a railroad track, similar testimony was offered on behalf of the plaintiff, and in discussing the weight to be given to such testimony the Court in its opinion said: ''We do not think, however, the actions of the engineer should be viewed in the light of a calm and deliberate test, made by witnesses standing on the track and looking intently at a small child, which they knew was being put upon the track for the very purpose of making the test. The engineer of a fast-moving train has many duties to perform, and it is not unreasonable that he, as he says, did not, in fact, see the object at

all until within one hundred and fifty feet of the child, and when it was absolutely too late to prevent the injury.''

██ ██ Finally, it is argued that the court erred in finding as a fact that the reasonable inferences from the evidence would be that the noise made by the engineer in giving the alarm and the running of the train caused the deceased to arouse from his drunken condition and straighten up to the extent that the side of the train hit him and carried him north 85 to 100 feet. It is argued that such finding was merely a conjecture on the part of the trial court, and that the finding was contrary to the physical facts. But we think the criticism made of the chancellor's finding on that point is not a valid criticism. As stated by the Court in the Hunnicutt case, supra, which involved a similar factual situation, we do not think that the evidence in the case and the physical facts here shown stop at mere conjecture as to how the deceased was injured. They go far beyond that. In our judgment, they clearly show that the injury was not inflicted by any want of ordinary care upon the part of the defendants, but was due solely to the deceased's own negligence.

Aside from the testimony of the four witnesses who made the experiment referred to above, there is no substantial evidence in the record which indicates that the engineer saw the deceased on the railroad right of way before he reached a point only 240 feet from the place where the deceased was lying, or that the engineer failed to exercise reasonable care to prevent striking the deceased after discovering that he was on the right of way. It is not claimed that the deceased was struck while lying on the railroad track between the rails.

We find no reversible error in the record and the decree of the lower court is affirmed.

Affirmed.

*Lee, P. J., and Ethridge, Rodgers and Jones, JJ.,* concur.