SMITH, Justice,
for the Court.
Indicted for murder in the Circuit Court of George County, George Kendall Galloway was convicted of manslaughter and sentenced to a term of sixteen years in the State Penitentiary.
Defendant was charged with killing Sam Fairley, a relative. About noon on the day Sam Fairley met his death, he was riding in the automobile of James Tillman. Tillman observed that the defendant was following him along the road and Sam Fairley told Tillman to stop and “let’s give him a drink.” They stopped on one side of the road and defendant stopped on the other side of the road, both headed north. Then they had a drink or two and talked a few minutes. Defendant thought that Tillman had something to do with the disappearance of Lee Fairley and this was the subject of discussion when Sam Fairley told defendant that James Tillman didn’t know anything about the disappearance of Lee Fairley. Defendant then said to Sam Fairley, “I figured that is none of your damn business.” The defendant reached into his car and pulled out a rifle and shot Sam Fairley. According to Tillman’s version of the occurrence, he did not know just how the defendant was holding the gun at the time Sam Fair-ley was shot, but he demonstrated it before the jury. Tillman did not know whether defendant deliberately aimed the gun at Sam Fairley or not, but he repeatedly stated that he pulled the gun out of the car and shot Sam Fairley. All of the parties were kin and all had been drinking to some extent, although it is not shown that any of them were drunk.
Defendant’s version of the shooting was that he had put the gun in the car to shoot birds and maybe kill a deer, and that when he reached in to take the gun out of the car, he caught it by the trigger, and as he pulled it out, the rifle hit the side of the door causing him to squeeze the trigger and the gun fired. He stated that the safety had been left off. Defendant also contended that Sam Fairley and James Tillman were arguing about Sam’s statement that Tillman had been fooling with his wife. Defendant testified that he went to his car and was taking the gun out because Sam Fairley knew that he had the gun and he was going to put the gun in the back seat to keep Sam from getting it and shooting Tillman.
As to the actual shooting, defendant testified, speaking of the gun, as follows:
It was in my left hand and when I pulled it out from under the seat, I reached over and caught it with my hand by the trigger. And the safety was probably off, and when the door bumped it, you see, I squeezed.
He stated that he squeezed the trigger because he did not want to drop the gun. Defendant and Tillman testified that defendant and Sam Fairley were good friends.
After the shooting, according to Tillman, the defendant asked him to take Sam Fair-ley to the doctor. Tillman refused but went to find a telephone to call an ambulance. Then the defendant left the scene, according to his version, to find someone to help him put Sam Fairley in the car and take him to the doctor. When he got back to the scene of the shooting, someone helped him put Sam Fairley in the car and they took him to the hospital. Fairley was conscious at least part of the time on the way to the hospital, but was dead on arrival. He never made any statement about the shooting.
Was the verdict contrary to the overwhelming weight of the evidence?
*1308 Citing and relying upon King v. State, 254 Miss. 162, 181 So.2d 158 (1965), and Done v. State, 202 Miss. 418, 32 So.2d 206 (1947), the defendant argues that the verdict was contrary to the overwhelming weight of the evidence. There are some similarities between the facts of the instant case and some of the facts in Done and King, but we are of the opinion that the question of the defendant’s guilt was for the jury. There are several aspects of defendant’s testimony vital to his theory of the case which the jury was fully justified in rejecting. After a careful study of the evidence, we are of the opinion that the question of defendant’s guilt was a matter for the jury and we cannot say that it was contrary to the overwhelming weight of the evidence.
Did the lower court err in overruling defendant’s objection to the testimony of the sheriff?
After the killing and after consulting with Tillman, the sheriff talked to the defendant before he was given the “Miranda” warning as prescribed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The sheriff asked the defendant what had happened. The defendant said to the sheriff: “Let’s go over to the house and get the gun.” The sheriff never questioned the defendant any further. And this is the only statement made by the defendant. It will be noted that the sheriff did not ask the defendant if he had shot Sam Fairley. He merely asked him what had happened. We do not think that this brief question under the circumstances constituted official interrogation as contemplated by the Miranda case. But if it was, we can safely say that beyond a reasonable doubt any error was harmless within the rule laid down in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). There is no doubt that defendant’s gun killed Fairley. Defendant testified to the shooting. Under the circumstances defendant’s statement was neither exculpatory or inculpatory — nor was it harmful.
We have carefully considered the defendant’s assignments of error concerning the instructions and we find no error in this respect. We are, therefore, of the opinion that the case should be and it is affirmed.
AFFIRMED.
GILLESPIE, C. J., PATTERSON and IN-ZER, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.