513 So.2d 901 (1987)
Nadine Long MAXWELL, Deborah Long Priest and Richard Long
v.
ILLINOIS CENTRAL GULF RAILROAD, T.R. Brumfield and National Railroad Passenger Corporation, d/b/a Amtrak.
No. 57088.
Supreme Court of Mississippi.
September 16, 1987.
Rehearing Denied October 28, 1987.
*902 W.H. McGehee, McGehee, McGehee & Torrey, Meadville, for appellants.
E.C. Ward, Ward & Ward, Robert C. Latham, Adams, Forman, Truly, Smith & Bramlette, Natchez, for appellees.
Before ROY NOBLE LEE, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
On the afternoon of November 24, 1981, fifteen-year-old Ledford Keith Long was riding his three wheeler slowly up the northbound railroad tracks just south of Brookhaven. The City of New Orleans approached from the rear also northbound and ran over Keith and killed him.
Members of Keith's family thought the train at fault and sued for wrongful death. The jury agreed but the Circuit Court did not, entering judgment for the Railroad notwithstanding the jury's verdict and, conditionally, granting the Railroad a new trial. For the reasons discussed below, we reverse the judgment notwithstanding the verdict but affirm the order granting a new trial.

II.
On July 24, 1984, Nadine Long Maxwell, Deborah Long Priest and Lonnie Richard Long, Keith's mother, sister and brother, respectively, commenced this civil action by filing their complaint in the Circuit Court of Franklin County, Mississippi. Their complaint was one for wrongful death. See Miss. Code Ann. § 11-7-13 (1972). Named as Defendants were Illinois Central Gulf Railroad Company, National Railroad Passenger Corporation, d/b/a Amtrak, and T.R. Brumfield, the locomotive engineer at the time of the accident. All Defendants (sometimes hereinafter collectively "the *903 Railroad") answered and denied all allegations of fault.
The case was called for trial in Circuit Court in Meadville, Mississippi, on September 5, 1985. The following day the jury returned a verdict in favor of Plaintiffs and against all Defendants in the amount of $200,000.00 and final judgment was entered thereon on September 13, 1985.
Thereafter, Defendants timely filed motion for judgment notwithstanding the verdict or, alternatively, for a new trial, or, alternatively, for a remittitur. On October 22, 1985, the Circuit Court granted the motion in substantial part, setting aside the verdict of the jury and entering judgment in favor of Illinois Central and the other Defendants, notwithstanding the verdict of the jury. In addition, the Circuit Court alternatively and conditionally ordered a new trial; that is, the Court directed that, in the event that the judgment notwithstanding the verdict should thereafter be vacated or reversed, the condition of the order for a new trial would thereupon be fulfilled and the case would be restored to the active docket of the Circuit Court for a new trial.
Plaintiffs, Nadine Long Maxwell, Deborah Long Priest and Lonnie Richard Long, as the survivors and personal representatives of Ledford Keith Long, deceased, have now appealed to this Court.

III.

A.
Plaintiffs first argue that the motion for judgment notwithstanding the verdict should never have been considered by the Circuit Court for the Railroad's failure to supply a procedural requisite thereto. Plaintiffs point specifically to Rule 50(b), Miss.R.Civ.P.,[1] and argue that a party must move for a directed verdict at the close of all the evidence before it may move for j.n.o.v. in the event of an adverse verdict. The record reflects, however, that at the conclusion of all of the evidence the Railroad requested a peremptory instruction which was refused. See Instruction No. D-25.
Rule 50(b) does indeed provide that a motion for directed verdict, at the end of all the evidence but before the case is submitted to the jury, is a procedural prerequisite to a subsequent post-verdict motion for judgment notwithstanding the verdict. No doubt out of habit lingering from our former practice, the Railroad merely requested a peremptory instruction. A request for a peremptory instruction serves the same function and purpose as a motion for directed verdict at the end of all the evidence. See Jones v. Hatchett, 504 So.2d 198, 205 (Miss. 1987). The question, accordingly, is whether we should fault the Railroad for its failure to adopt the new terminology of Rule 50(b) when the point it brought to the court's attention was for all practical purposes the same.
One leading authority on the analogous federal practice has stated that "the courts take a liberal view of what constitutes a motion for directed verdict in deciding whether there was a sufficient prerequisite for the motion for judgment." 9 Wright & Miller, Federal Practice and Procedure § 2537, pp. 596-97. While there are jurisdictions *904 that take a hard line, see, e.g., Martinez Moll v. Levitt & Sons of Puerto Rico, Inc., 583 F.2d 565 (1st Cir.1978) and DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193 (3rd Cir.1978), others, including the Fifth Circuit, have been more lenient.
Bohrer v. Hanes Corp., 715 F.2d 213, 216 (5th Cir.1983) states that:
Rule 50(b) serves two essential purposes: to enable the trial court to reexamine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury, thereby affording it an opportunity to cure any defects in proof should the motion have any merit.
In Bohrer, the defendant moved for a directed verdict at the close of plaintiff's case. The judge, although concerned that the evidence did not present a jury issue, decided to permit the jury to have the case but invited the defendants to renew their attack via a motion for "j.n.o.v. or motion at the close of evidence." The defendant did the former and his failure to do both was excused by the Bohrer court
because we are convinced that the purposes of the rule have been served. To demand a slavish adherence to the procedural sequence and to require these defendants, in this case, to articulate the words of renewal once the motion had been taken under advisement, would be to succumb to a nominalism and a rigid trial scenario as equally at variance as ambush with the spirit of the rules.
Bohrer, 715 F.2d at 217.
The Court also notes the "liberal spirit in viewing the Federal Rules of Civil Procedure, Fed.R.Civ.Pro. 1." 715 F.2d at 217. See also Farley Trans. Co, Inc. v. Santa Fe Trail Trans. Co., 786 F.2d 1342 (9th Cir.1985); Halsell v. Kimberly Clark Corp., 683 F.2d 285 (8th Cir.1982); Jack Cole v. Hudson, 409 F.2d 188 (5th Cir.1969); Beaumont v. Morgan, 427 F.2d 667 (1st Cir.1970).
Jack Cole concerns a request for a jury instruction to find in the defendant's favor, as in the case at bar. In finding that "this constitutes a sufficient predicate for the subsequent motion for judgment notwithstanding the verdict," the court stated that "There can be no doubt that the trial judge was well aware of the reasons for the requested jury instruction." Jack Cole, 409 F.2d at 191.
In the instant case, the Railroad did request a peremptory instruction which was refused. Later, in ruling on the motion for j.n.o.v., the Circuit Court stated:
At the conclusion of all the testimony in a case, it is customary for the defense to ask for what is called a peremptory instruction, whereby they again ask the court to look at all the testimony adduced at the trial and make a determination whether or not to order the jury to make a finding for the defendant.
Again, in this case-in-chief, even though the Defendants' position was very strong in their request for a P.I... .
It is clear that here, the purpose of the Rule 50(b)-required motion for directed verdict at the conclusion of the evidence was served by the Railroad's request for a peremptory instruction. By this request the Circuit Court was asked to and was given the opportunity to view all of the evidence to determine whether plaintiffs had made out a jury question on the liability phase of their case. This is what  and all  Rule 50(b) required of the Railroad.
This assignment of error is denied.

B.

1.
We turn now to the merits of Plaintiffs' claim that the Circuit Court erred when it entered judgment for the Railroad notwithstanding the verdict of the jury. The ground rule according to which a trial court may consider a motion for judgment notwithstanding the verdict are familiar but need restatement. In Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984), this Court stated:
Where a motion for j.n.o.v. has been made, the trial court must consider all the evidence in the light most favorable *905 to the non-movant, who must also be given the benefit of all favorable inferences that may be reasonably drawn from the evidence; if the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, granting the verdict is required; on the other hand, if there is substantial evidence opposed to the motion, i.e. evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand.
464 So.2d at 54; see also Baker Service Tools v. Buckley, 500 So.2d 970, 972 (Miss. 1986); Spradlin v. Smith, 494 So.2d 354, 356 (Miss. 1986); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975). On appeal we employ these same criteria as we review the evidence.
We begin with the fact disputed by no one  that Keith Long was a trespasser. The duties of a railroad under such circumstances have been stated in Illinois Central Gulf Railroad Co. v. Ishee, 317 So.2d 923 (Miss. 1975).
... The servants of a railroad company in charge of its train are under no duty to keep a lookout for trespassers on the railroad track, and are required only to exercise reasonable care to prevent injuring a trespasser after they have discovered and realized his peril.
317 So.2d at 925.
The Railroad's duty, thus, breaks down into two parts. Prior to noticing Keith Long on the track, the Railroad had only the general duty an owner or occupant of land has to trespassers, that is, to refrain from wilfully, wantonly, or grossly negligently injuring the trespasser. McGee v. Charles F. Smith & Sons, Inc., 357 So.2d 930, 931 (Miss. 1978); Illinois Central Gulf Railroad Co. v. Ishee, 317 So.2d 923, 924-26 (Miss. 1975). Once the trespasser was in fact observed, however, the Railroad had a duty to exercise ordinary or reasonable care under the circumstances to refrain from injuring him, but it must be remembered that the circumstances were by definition extreme or emergency circumstances. See Knapp v. Stanford, 392 So.2d 196, 198-99 (Miss. 1980).

2.
Our focus today is upon identification of the Railroad's duty once Keith was spotted on the tracks and, of course, whether the Railroad discharged that duty. In Yazoo & Mississippi V.R. Co. v. Smith, 111 Miss. 471, 71 So. 752, 756 (1916), we said, "Of course, circumstances may, and do, have something to do with the degree of care incumbent upon railroad employees after the trespasser is seen." In that case, however, it was stated that the railroad is under no obligation to keep a lookout for trespassers but should, nevertheless, refrain from injuring them once they are discovered in a "position of peril." 111 Miss. at 484, 71 So. at 756. Cited with approval in Dickerson v. Illinois Central Railroad Co., 244 Miss. 733, 748, 145 So.2d 913, 919 (1962). At any rate "the test of responsibility arises when the engineer becomes aware of the presence in peril of the trespasser." Gulf, Mobile & Ohio Railroad Co. v. Hollingshead, 236 So.2d 393, 395 (Miss. 1970). Thereupon, the Railroad has a duty to warn. In Young v. Columbus & G.R. Co., 165 Miss. 287, 147 So. 342 (1933), we said that
If the engineer after becoming aware of the presence of a trespasser does nothing to warn him by sounding the whistle and by taking such other reasonable action as would save the trespasser from death or serious injury, the railroad company is liable, as for a wanton or wilful injury... .
165 Miss. at 294, 147 So. at 343.
If the trespasser is an adult and apparently in possession of his faculties, however, it has been held that the engineer is entitled to expect the person to hear the warning signals and remove himself from danger. Thus, the speed of the train need not be slackened until circumstances show that the person will probably not seek safety in time. Yazoo & M.V.R. Co. v. Lee, 148 Miss. 809, 820, 114 So. 866, 870 (1927) (unfortunately *906 the late Dr. Lee was hearing impaired). As for children, the railroad has no special duty to look out for them either, although, once seen, it may not be presumed that a child will take care of itself as an adult would. Yazoo & Mississippi V.R. Co. v. Smith, 111 Miss. at 484, 71 So. at 756.
Specifically, then, upon seeing a person in danger, the "reasonable duty" has been fleshed out to mean that the whistle is to be blown if there is time within which this may be done. Young, 147 So. at 343. Under Gulf & S.I.R.R. v. Williamson, 162 Miss. 726, 139 So. 601, 602 (1932), the engineer must stop the train if the trespasser's peril is appreciated in time to stop the train.

3.

1. Propriety Of A J.N.O.V.

In the instant case, the Plaintiffs attempted to show the railroad did not exercise reasonable care in three ways:
(1) the railroad employees should have seen the deceased at some distance before they actually did;
(2) that the employees failed to use their whistle once they did see the boy; and
(3) that they did not use all of their available braking power.
The first issue is of little consequence as a railroad is under no duty to keep a lookout for trespassers. See Hollingshead, 236 So.2d at 395; Fayard v. Louisville & N.R. Co., 48 So.2d 133, 136 (Miss 1950); Lee, 148 Miss. at 821, 114 So. at 869; and Dickerson v. Illinois Central Railroad Co., 244 Miss. 733, 748, 145 So.2d 913, 919 (1962).
The third issue, breaking power, contains no factual dispute. The engineer, Brumfield, testified without contradiction that he applied the emergency brakes, without doubt a reasonable response under the circumstances. See Gulf, Mobile & Ohio Railroad Co. v. Hollingshead, 236 So.2d 393, 396 (Miss. 1970). Plaintiffs also fail credibly to suggest that the Railroad may have been tardy in applying the brakes.
Our question thus boils down to whether there was sufficient evidence whereupon a rational jury may have found the Railroad breached its duty to sound the whistle once Keith Long was spotted on the tracks ahead.
We find as a matter of law on these facts that the Railroad had enough time to sound the whistle. The testimony varies but suggests that Keith was seen between five and ten seconds before impact. This, coupled with the fact that both the engineer and fireman insist that the whistle was sounded, establishes that there was enough time.
We have reviewed the testimony on this point with great care. First there is the positive evidence of the fireman and the engineer that the engineer blew the whistle in short blasts from the time the boy was spotted until the collision occurred. However, neither heard the blasts. Both, as well as three other railroad employees on the train that day testified that they never heard whistles while working inside the train with the doors closed.
This testimony the Plaintiffs attempted to discredit by having an impartial party ride the Amtrak from Hazlehurst to McComb and record every whistle he heard along the way. Tim McNulty testified he heard the whistle blow fourteen times while he rode in various passenger cars. For this he was given only his ticket. Harold Carey Graves testified that he rode Amtrak on July 11, 1985, from Brookhaven to Winona and remembered hearing the whistle blown. He also remembered hearing a whistle on a trip from Brookhaven to New Orleans on Labor Day, 1983.
Randy Donald Nations testified that he lives about three-quarters of a mile to a mile from where the accident occurred and that the day of the accident he had seen Keith Long putting air in his tires at a store across the street from Nations' house. Nations stated he was outside that afternoon and he never heard a whistle.
Keith's stepfather was also outside in his yard at the time of the accident and did not *907 hear a whistle. He stated that their house was about three miles from the site.
James Ray Maxwell testified that he was in the area hunting at the time of the accident. Between 2:00 and 2:30 that afternoon he parked his truck a few feet from the track. It is difficult to ascertain Maxwell's position at the time of the accident, but he appears to have been north of the site some 150 yards from the tracks. He testified that after hearing the accident it took him five to ten minutes to get to the track and another five to ten minutes to walk down the track to get 150 to 200 yards from the stopped train. Maxwell testified that while he had heard the train coming for about 35 minutes, ("I mean I got good ears") and had heard "a bunch of air," he never heard a whistle blow. Maxwell also admitted he had been in Whitfield twice for "high temper," and testified that his father, Curtis Maxwell, had married the decedent's mother sometime subsequent to the accident.
Conflicting evidence as to whether a train whistle blew has been dealt with in more than a few cases. In Mobile & O.R. Co. v. Johnson, 157 Miss. 266, 126 So. 827 (1930) this Court stated:
Negative testimony rises or declines in the scale of probative weight according to the opportunity of the negative witnesses to hear and observe; whether their attention was directed to or diverted from the fact in issue; whether the particular fact was an unusual or only a common occurrence in the daily routine of their lives; whether the particular witness was normal in the sense of hearing and sight; and whether observant or indifferent to details.
157 Miss. at 271, 126 So. at 828.
These considerations are most often left to the jury, the Court continued, but the court may be required to apply the rule that
The testimony of witnesses that they did not hear the ringing of the bell on a locomotive as it approached a crossing, without proof that the witnesses listened for the bell, or that their attention was any way directed to it, or that they probably must have heard the bell if it did ring, cannot prevail against the positive testimony of other credible witnesses that the bell did ring at the time in question.
Johnson, 157 Miss. at 271, 126 So. at 828. See also Illinois Central Gulf Railroad Co. v. Yates, 334 So.2d 364, 368 (Miss. 1976); Gulf, Mobile & Ohio Railroad Co. v. Grubbs, 260 So.2d 837, 838 (Miss. 1972); and Illinois Central Railroad Co. v. Smith, 243 Miss. 766, 773-74, 140 So.2d 856, 857 (1962).
In today's case the greater weight of the credible evidence supports the view that the emergency whistle was sounded. On the other hand, the firmly established rule respecting the authority of courts to intervene when a jury has resolved a question of fact preclude us acting upon that view. Considering the evidence in the light most favorable to the Plaintiffs, and giving the Plaintiffs the benefit of all favorable inferences that may reasonably be drawn therefrom, and taking the evidence on the issue of the sounding of the whistle in the aggregate, we may not escape the conclusion that there is in this record some credible evidence that the whistle never sounded. It follows that the Circuit Court erred when it granted judgment for the Railroad notwithstanding the verdict of the jury.

IV.
In the alternative to its motion for judgment notwithstanding the verdict, the Railroad moved for a new trial. The Circuit Court conditionally granted this motion on the ground that the verdict was contrary to the greater weight of the evidence. The condition has come to pass, for we have held that the Circuit Court was in error when it entered judgment for the Railroad notwithstanding the verdict.
Our procedural law provides for the alternative motion for a new trial, the conditional granting of same, and for grant to become the dispositive ruling in the case, once the condition is fulfilled. Spradlin v. Smith, 494 So.2d 354, 355-56 (Miss. 1986); Johnson v. City of Pass Christian, 475 *908 So.2d 428, 431-32 (Miss. 1985); Larkin v. Perry, 427 So.2d 138, 139 (Miss. 1983).
Here, of course, we are concerned with a standard of review different from that employed when considering a motion for judgment notwithstanding the verdict. The grant of a new trial is predicated upon the weight of the evidence, as distinguished from its legal sufficiency. That the motion for judgment notwithstanding the verdict should not have been granted in no way compels the conclusion that the Circuit Court also erred in ordering a new trial. See Stubblefield v. Jesco, Inc., 464 So.2d 47, 58-59 (Miss. 1984) (Robertson, J., concurring in part, dissenting in part).
Reversal of a trial court's ruling on a motion for new trial is proper only when it is clear that the trial judge's action constitutes an abuse of discretion. See Gill v. W.C. Fore Trucking, Inc., 511 So.2d 496, 498 (Miss. 1987); Thornhill v. Wilson, 504 So.2d 1205, 1209 (Miss. 1987); Maryland Casualty Co. v. City of Jackson, 493 So.2d 955, 961 (Miss. 1986); Rule 59, Miss. R.Civ.P. Here we do not reach that point, for the granting of a new trial is not a final judgment and thus is ordinarily not appealable. Shelton v. Puckett, 483 So.2d 354, 356 (Miss. 1986); Byrd v. Sinclair Oil & Refining Co., 240 So.2d 623, 624-25 (Miss. 1970); see also Harrison v. Illinois Central Gulf Railroad Co., 219 Miss. 401, 409, 69 So.2d 218, 221 (1954). The order granting the Railroad this stands undisturbed.

V.
Via cross-appeal, the Railroad claims that the Circuit Court erred in refusing to grant its motion for change of venue. The motion was predicated, first, upon the premise that as a matter of law venue was not proper in Franklin County, and, second, on the grounds that the Railroad could not obtain a fair trial in Franklin County.
The Railroad filed a timely motion for change of venue from Franklin County to Pike County or Lincoln County. The Defendant T.R. Brumfield is a resident of Pike County and the accident occurred in Lincoln County. The motion stated that Illinois Central Gulf Railroad Company is a corporation organized in Delaware and qualified to do business in Mississippi while Amtrak is a national business also qualified to do business in Mississippi. The Plaintiffs reside in Franklin County.
The record shows that the jury panel was made up of 31 citizens of Franklin County, a majority of whom indicated they knew the Plaintiffs personally or by sight. Three members of the panel were excluded for being related to the Plaintiffs and two others were excused because they stated that "they had some feeling about the outcome of the case and felt they might not be fair due to their connection with the attorneys and parties in the case."
We begin with the venue statute. Miss. Code Ann. § 11-11-5 (1972) provides as follows:
Section 11-11-5. Actions Against Railroad and Certain Other Companies. Actions against any railroad, express, steamboat, power, superpower, telegraph or telephone lines, or against any corporation or individuals owning, managing, operating or controlling a motor transportation line for the conveyance of passengers, freight or express, for hire, over the highways in the state of Mississippi, may be brought in the county where the cause of action accrued, in a county where the defendant has its principal place of business or in the county in which the plaintiff resides.
As may be seen from the statute, venue is proper, among other places, "in the county in which the plaintiff resides." The evidence here is uncontradicted that all three Plaintiffs, the mother, sister and brother of Keith Long, reside in Franklin County. Venue was properly laid in Franklin County.
But this does not answer the second prong of the Railroad's position, to-wit: that it could not obtain a fair trial in Franklin County.
Miss. Code Ann. § 11-11-51 (1972) gives either party in a civil action the power to have the venue changed upon showing that he cannot obtain a fair and impartial trial *909 due to "undue influence of the adverse party," or, "prejudice existing in the public mind," or some other reason. The few cases in which this Court has dealt with this issue are ones in which prejudice was easily shown. For example, in a wrongful death suit involving the same facts on which the defendant was indicted for murder, the defendant was entitled to a change of venue because not only had he been given one in the earlier criminal trial, but the examination of the jurors demonstrated the need for a change. King v. Kelly, 243 Miss. 160, 172, 137 So.2d 808, 813 (1962). In Tucker v. Gurley, 176 Miss. 708, 721, 170 So. 230, 232 (1936), it was not error to grant a change of venue in an action for a wrongful killing by deputy sheriffs to a county other than that of the deputies' residence.
In Mississippi State Highway Commission v. C.B. Rogers, 240 Miss. 529, 535-37, 128 So.2d 353, 356-57 (1961), a condemnation case, the cause had already been tried twice and each verdict had been found by the courts to be excessive. Witnesses for Rogers who had had no experience in appraising land values, testified that the land after condemnation would be devalued by $120,000.00 to $130,000.00 while the highway commission's experienced witness testified that Rogers should be compensation $22,000.00 for his six and a half acres. It was also shown that juries in that district had awarded verdicts in other eminent domain cases which the courts had found to be excessive. On appeal, this Court stated "that although the trial court's denial of a motion for change of venue will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case." In the instant case, the refusal constituted reversible error. Rogers, 240 Miss. 539-40, 128 So.2d at 358.
More recently, this Court refused to overturn just such a denial in NAACP v. Claiborne Hardware Co., 393 So.2d 1290, 1295 (Miss. 1980), rev. on other grounds, 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982). There, the Court stated, the movant failed to show "prejudice to him in the refusal."
All of this said, we hold that the Circuit Court acted within its lawful discretion when it denied the Railroad's motion for change of venue. This holding is without prejudice to the Railroad's right to make that motion anew should it appear that the first trial generate within Franklin County sufficient knowledge of and interest in this case that the Railroad could not on remand get a fair trial there.

VI.
Because this case must be remanded for a new trial, we note that the Railroad has cross-appealed on two evidentiary points. The Railroad first complains that the Circuit Court erred in allowing introduction of testimony and exhibits from Ronald Phillips, a land surveyor. Mr. Phillips presented a map of a 3800 foot area surrounding the tracks in question. He also described an experiment he conducted with the aid of another. While Phillips stood on the center of the track at a point where the accident is assumed to have occurred, another man walked south down the track until he could no longer be seen. The farthest point at which Phillips could see the man's entire body was 1324 feet away. The Railroad said this testimony should not have been admitted. Second, the Railroad objected to the testimony of Tim McNulty who testified that he had ridden an Amtrak train that very day and had heard the whistle fourteen times and had recorded the whistle blows on a cassette recorder while noting them in a memo book. The book, but not the tape, was introduced into evidence over the Railroad's objection.
No useful purpose could be served by discussing these points. This case was tried in September of 1985. On January, 1986, the Mississippi Rules of Evidence became effective. Suffice it to say that at the new trial we order this day the admissibility of this testimony will be governed by the applicable provisions of the Mississippi Rules of Evidence. For this reason we find it unnecessary to discuss whether under *910 pre-Rules law the testimony of Phillips and McNulty was admissible.

VII.
The Railroad further complains of two instructions submitted to the jury at Plaintiffs' request. Because these points may well arise on remand, they should be addressed.
The Railroad's complaint refers to Plaintiffs' Jury Instructions P-5 and P-6. Plaintiffs' Instruction P-5 states:
The Court instructs the jury that if you believe from the evidence in this case that the engineer or fireman saw Ledford Keith Long on the track of Defendant, in a position of peril, and did not immediately give signal of its approach and do everything possible to stop the train and avoid the injury and resulting death of Ledford Keith Long or that the Defendant failed to do either of these things, and that one or both of these things contributed to or proximately caused the injuries and resulting death of Ledford Keith Long, then it is your sworn duty to find for the Plaintiffs, and this is so even though you may believe that Ledford Keith Long was at the time a trespasser on the property of Defendant and was there without any right whatsoever, and even though you may believe that Plaintiff was not struck at or near any public road crossing.
Plaintiff's Jury Instruction P-6 states as follows:
The Court instructs the Jury that even though you may believe that Ledford Keith Long was a trespasser on the Defendant company's railroad track at the time he was killed, if you should further believe from a preponderance of evidence in this case, that said Ledford Keith Long was run over and killed by the negligent operation of the Defendant's said train, by its employees in charge thereof, and that such negligence, if any you so find, was the proximate cause of his death or a proximate contributing cause, then you will find a verdict for the Plaintiffs, but in such case the award of damages to Plaintiffs should be reduced in the proportion which you may believe that the negligence on the part of deceased, if any, contributed to his death.
The duty of care has already been discussed at some length in Part III(B) above. Instruction P-5 misrepresents the law since no duty to stop the train arises unless the trespasser's position of peril is recognized in time to stop the train. Williamson, 162 Miss. 726, 139 So. 601 (1932). The Plaintiffs concede there was not time to stop the train in the five to ten seconds available as testified to by the engineer. The instruction states that the train had a duty to warn. This is also supported by the law. But the Railroad did not have a duty to do everything possible to stop the train. That part of P-5 is unsupported by the law and should not be given on remand.
Instruction P-6 is likewise deficient. That instruction fails to make clear that the Railroad's duty of reasonable care arose only when its engineer and fireman first saw Keith. The instruction should further tell the jury that the Railroad's duty then was to exercise reasonable care under the particular circumstances with which it was then confronted, circumstances which were, to say the least, unusual.
REVERSED AND REMANDED.
ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
WALKER, C.J., not participating.
NOTES
[1] Rule 50(b), Miss.R.Civ.P., in its entirety, reads:

(b) Motion for Judgment Notwithstanding The Verdict.
Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than ten days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned, such party, within ten days after the jury has been discharged, may move for judgment in accordance with his motion for directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.