876 So.2d 380 (2003)
Eric HEARN, Appellant,
v.
Harley BROWN, Jr., Appellee.
No. 2002-CA-01029-COA.
Court of Appeals of Mississippi.
September 23, 2003.
Rehearing Denied March 23, 2004.
Certiorari Denied July 1, 2004.
Barry H. Powell, Jackson, attorney for appellant.
Jeffrey Lee Carson, James D. Holland, Ridgeland, attorneys for appellee.
EN BANC.
McMILLIN, C.J., for the Court.
¶ 1. This is an appeal from a judgment notwithstanding the verdict entered by the trial court in a civil trial after the jury *381 returned a verdict in favor of the plaintiff, Eric Hearn, in the amount of $100,000. Pursuant to the provisions of Mississippi Rule of Civil Procedure 50(c), the circuit court, in ruling on posttrial matters, also conditionally granted a new trial on the basis that, as to the issue of liability, the verdict was against the weight of the evidence. We find that the circuit court erred in granting a judgment notwithstanding the verdict in favor of the defense, and we remand for a new trial.

I.

Facts
¶ 2. Hearn was injured at the residence of Harley Brown, Jr. when Hearn fell through what he contended was a rotten portion of the roof to Brown's residence. Hearn brought this action alleging negligence on the part of Brown. His theory of recovery was based upon principles of premises liability law as it has developed in Mississippi. Some of the critical facts in support of Hearn's claim were essentially undisputed; however, there was sharply conflicting testimony as to other aspects of the proof. We will briefly summarize the facts and point out those areas where there was disputed testimony central to the outcome of the case.
¶ 3. Hearn was a fireman who also worked as a commercial roofing contractor on a part-time basis. One of his superiors at the fire department was engaged in the business of residential house painting as a sideline and had apparently contracted to do some outside painting for Brown. There was some concern about water damage and rotting of some wood on the house, and Hearn was asked by his associate to go to the home to see if he could determine the possible cause of the damage.
¶ 4. In furtherance of that purpose, Hearn went to Brown's residence. Hearn testified that the following events occurred. He accomplished the initial purpose of his visit by making a visual inspection from the ground and determined that, at the point where water damage was apparent, there was inadequate shingle overhang, which permitted rainwater to run behind the wooden trim at the base of the roof. During the course of the conversation, Brown raised the subject that he had a leak at another point in his roof around a vent pipe and inquired of Hearn as to possible causes. Hearn indicated that he could not make that determination because the area in question was covered with a substantial amount of accumulated pine straw that needed to be removed. Brown professed a fear of heights and asked if Hearn would assist in the removal of the pine straw. Hearn agreed and went up on the roof and began to rake the pine straw toward the edge of the roof. As he neared the roof's edge, Brown suddenly called out a warning from the ground that Hearn was approaching another area known to have rotten wood. The warning came too late as Hearn fell through a rotten portion of the roof, onto and through an adjoining patio area that was covered with translucent green-tinted fiberglass material. Hearn fell through the patio roofing to a concrete surface below, receiving damages that ultimately required fairly extensive medical treatment.
¶ 5. Hearn's theory of recovery was that the rotten area through which he fell was a hidden or latent defect known to Brown but not readily apparent to Hearn because it was covered by the accumulated mat of pine straw. In that circumstance, according to Hearn, Brown, as the individual in control of the premises, had a duty under applicable premises liability law to warn Hearn of the hidden hazard. His failure to do so (or, more precisely, his failure to *382 do so until it was too late for Hearn to protect himself) was an act of negligence.
¶ 6. Brown testified and gave a different version of events on the day in question. He indicated that he requested that Hearn make a thorough inspection of his roof to see if there were other matters needing attention beyond the previously-discovered improper shingle overhang. Hearn indicated that he could not complete such an inspection because of the portion of the roof covered with pine straw. Brown related his own fear of heights, and at that point, Hearn requested that he be handed a rake and began to remove the pine straw, raking it toward the edge of the roof. Brown denied having any knowledge of a rotten area in the location where Hearn was raking. As Hearn neared the edge, Brown twice asked him to use special caution  not because of any known danger  but simply because Brown's own fear of heights was causing him substantial unease. According to Brown, Hearn dismissed Brown's statements of concern by reminding him that he had been in the roofing business for twenty-two years and had yet to fall off a roof. At some point, Hearn put his foot off the edge of the roof, using one of the braces for the patio cover as a foot rest, and it was at that point that Hearn fell through the patio covering. Brown testified that, after Hearn's fall, he had occasion to view the area where the fall occurred, and there was no evidence of rotting or other structural failure of the roofing area of the house.
¶ 7. The jury returned a verdict in favor of Hearn in the amount of $100,000. The trial court, reciting that it had "considered all of the evidence ... with all reasonable inferences in the light most favorable to [Hearn]," concluded that Hearn had "failed to meet his burden of proving the requisite elements of his claims...." The court therefore ordered the entry of a judgment in favor of Brown notwithstanding the jury's verdict. The court further ordered that "[i]n the alternative, the Court finds that [Brown's] motion for a new trial on liability is proper and should be granted."
¶ 8. Hearn perfected this appeal in which he raises two issues. First, he contends that the trial court erred in directing entry of a verdict against him because the evidence was not such that a reasonable jury fairly assessing the evidence could only find in favor of the defendant, Brown. Secondly, he argues that the verdict was not against the weight of the evidence and that the trial court therefore abused its discretion in ordering a new trial.
¶ 9. For reasons we will proceed to explain, we find Hearn's first issue to have merit, and we reverse the judgment entered by the trial court in favor of Brown. However, as to the second issue, we determine the order granting a new trial to be interlocutory in nature and, thus, beyond our jurisdiction to consider at this point. For that reason, we reverse and remand for a new trial.

II.
Judgment Notwithstanding the Verdict
¶ 10. A verdict returned by a jury in a civil case is afforded substantial deference when the dissatisfied litigant seeks to have the court enter a judgment compelling a contrary outcome.
All credible evidence tending to support the non-movant's case and all favorable inferences that can be reasonably drawn therefrom are accepted as true and go to the benefit of the non-movant. If after examining the evidence, reasonable and fair-minded jurors could reach different conclusions, the jury verdict should be allowed to stand and the JNOV motion denied.
*383 Weathersby Chevrolet Co. v. Redd Pest Control, 778 So.2d 130, 132(¶ 5) (Miss.2001) (citations omitted).
¶ 11. In this case, Hearn was undoubtedly possessed of specialized knowledge not available to Brown because of his years of experience in the business of commercial roofing, and Brown contended that this expertise obviated the need for him to warn Hearn of the danger associated with walking about on a roof  the very purpose for which Hearn was present on the property. Hathorn v. Hailey, 487 So.2d 1342, 1344 (Miss.1986). The trial court apparently agreed with this contention as the basis for granting a JNOV. On the other hand, it was Hearn's theory of recovery that, even though he was on the premises as a business invitee specifically because of his specialized skills in regard to roofing, the property owner nevertheless had a duty to warn him of special or hidden dangers known to that property owner to exist. See Jackson Ready-Mix Concrete v. Sexton, 235 So.2d 267, 269-72 (Miss.1970).
¶ 12. In the case before us, there was evidence in the form of testimony by Hearn that would support a reasonable inference that Brown was on actual notice of a portion of his roof that presented a particular hazard that went beyond the general danger associated with walking about on the roof of a house. This especially hazardous area was known to Brown because it had shown evidence of rotten wood. The evidence would further permit a reasonable inference that Hearn was not requested to go on the roof to deal with this particular hazard, but rather, that at the point he fell, he was simply helping remove the accumulated pine needles on the roof as an accommodation to Brown because of Brown's previously-disclosed fear of heights. The particular danger that proximately led to Hearn's injury was obscured by the pine needles but was known by Brown to exist as evidenced by his alleged eleventh-hour caution to Hearn that specifically mentioned the hazard of rotten wood but came too late to permit Hearn to avoid his injurious fall. Certainly, there was evidence tending to show both that Brown did not possess undisclosed knowledge of this particular hidden hazard and that his belated warnings to Hearn urging caution did not concern a rotten area on the roof but were simply manifestations of Brown's own uneasiness in seeing Hearn so near the roof's edge. There was, in fact, evidence tending to show that, not only was Brown unaware of any such rotten area but that, in fact, no such rotten area existed, and that Hearn's fall arose out of the fact that he lost his footing for no reason attributable to any fault on the part of Brown.
¶ 13. The jury resolved these disputed issues of fact in favor of Hearn. In such situations, the jury sits as finders of fact, and their findings are entitled to substantial deference. Booker ex rel. Certain Underwriters at Lloyd's of London v. Pettey, 770 So.2d 39, 42(¶ 21) (Miss.2000). Though it presents a close question, upon a review of the evidence in the required light that favors Hearn as the non-movant, and assuming that the jury drew all permissible inferences from that favorable evidence, we cannot say that a reasonable jury could only find for Brown under the law. For that reason, we find that the trial court erred in granting Brown's motion for JNOV, and we vacate that part of the court's post-verdict judgment.

III.

Conditional Order for New Trial
¶ 14. As we have previously observed, the trial court, in addition to granting a JNOV in favor of Brown, conditionally granted his motion for new trial. This *384 conditional ruling by the trial court was in accord with its duties as prescribed in Mississippi Rule of Civil Procedure 50(c), which provides:
If the motion for judgment notwithstanding the verdict ... is granted, the court shall also rule on the motion for a new trial ... by determining whether it should be granted if the judgment [notwithstanding the verdict] is thereafter vacated or reversed....
M.R.C.P. 50(c).
¶ 15. Hearn, in addition to asking this Court to set aside the JNOV, seeks to have us determine that the trial court erred in this provisional ruling. The effect of doing so would be for this Court to reinstate the original jury verdict in Hearn's favor in the amount of $100,000.
¶ 16. We find, however, that this Court lacks jurisdiction to reach this second issue on the merits. It is fundamental law in this State that an order for new trial in a civil action based upon any factor other than the excessiveness or inadequacy of the verdict amount is an interlocutory determination that is not the proper subject of an appeal as a matter of right. Bowman v. Rutledge, 369 So.2d 768, 769 (Miss.1979). In this case, the trial court conditionally ordered a new trial on the issue of liability, which plainly has nothing to do with issues relating to the size of the jury's verdict. Once this Court determined that the circuit court erred in granting a JNOV, the conditional nature of the order for new trial on liability was removed, and it became the operative direction of the circuit court as to how the case would proceed at the trial level. Because of its interlocutory nature, that order is beyond the jurisdiction of this Court to consider.
¶ 17. The rule that an order granting a new trial motion is interlocutory in nature and not the proper subject of an appeal predates the adoption of our rules of civil procedure in 1981. We note that Rule 50(c) goes on to provide that "[i]n case the motion for a new trial has been conditionally granted and the judgment [notwithstanding the verdict] is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered." M.R.C.P. 50(c) (emphasis added).
¶ 18. The issue then presents itself as to whether the phrase "unless the appellate court has otherwise ordered" has vested an appellate court with authority to review an otherwise interlocutory decision by the trial court in the limited situation where the new trial motion was preceded by the erroneous grant of a judgment notwithstanding the verdict. We conclude that this language has not altered the interlocutory nature of a decision by the trial court to grant a new trial motion based on its decision that the verdict as to liability is against the weight of the evidence. This proposition is supported by the Mississippi Supreme Court decision in Maxwell v. Illinois Central Gulf Railroad, 513 So.2d 901 (Miss.1987). That case, decided after the adoption of Rule 50, dealt with the situation identical to the one we face. The jury had awarded a plaintiff's verdict in a wrongful death claim arising out of a collision between a three-wheeler ridden by the decedent and a train operated by Illinois Central. Id. at 902. Despite the jury's verdict, the trial court entered a JNOV in favor of the railroad and also conditionally granted the railroad's new trial motion. Id. On appeal, the wrongful death beneficiaries succeeded in convincing the supreme court that the granting of the JNOV motion was reversible error. Id. at 907.
¶ 19. At that point, the supreme court took up the portion of the circuit court's judgment conditionally granting a new trial. After noting that the standard for appellate review of the decision on a new *385 trial request is "an abuse of discretion," the court went on to say, "Here we do not reach that point [of determining whether there was such an abuse of discretion], for the granting of a new trial is not a final judgment and thus is ordinarily not appealable. The order granting the Railroad this [new trial] stands undisturbed." Id. at 908 (citations omitted).
¶ 20. The procedural aspects of this case cannot be distinguished from Maxwell. The order for a new trial, no longer conditional by virtue of the decision of this Court on the JNOV, necessarily stands beyond the jurisdiction of this Court to disturb at this juncture of the proceeding. We have no alternative but to remand for a new trial.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY GRANTING A JNOV IN FAVOR OF THE APPELLEE, HARLEY BROWN, JR., IS REVERSED AND THIS CAUSE IS REMANDED TO THE CIRCUIT COURT OF HINDS COUNTY FOR A NEW TRIAL PURSUANT TO THE CIRCUIT COURT'S CONDITIONAL ORDER, INTERLOCUTORY IN NATURE, GRANTING THE SAID HARLEY BROWN, JR. A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN PART AND DISSENTS IN PART JOINED BY KING, P.J.
IRVING, J., CONCURRING IN PART AND DISSENTING IN PART.
¶ 22. A jury, after considering conflicting testimony regarding key issues, returned a verdict for Eric Hearn in the amount of $100,000 for injuries he suffered when he fell off the roof at Harley Brown, Jr.'s home. Following the conclusion of the trial, the trial court granted Brown's motion for JNOV and conditionally granted Brown's motion for a new trial on liability. The majority finds that the trial court erred in granting the JNOV and that this Court lacks jurisdiction to consider whether the trial court erred in ordering a new trial.
¶ 23. I agree with the majority that the trial court erred in granting the JNOV in this case. I further agree with the majority that the effect of our holding regarding the grant of the JNOV is to remove the condition for the grant of a new trial. Therefore, in my opinion, our holding brings to the forefront, for appellate consideration, the propriety of the grant of the motion for a new trial. The majority, citing a pre-rules decision regarding the interlocutory nature of an order for a new trial, finds that we lack jurisdiction to consider the new trial issue, notwithstanding the fact that we bring this issue to the surface by our resolution of the JNOV issue, both of which are intertwined in the singular order entered by the trial court which is the subject of this appeal. With generous respect, I must dissent from the majority's holding that we lack jurisdiction to consider the appropriateness of the trial court's grant of a new trial.
¶ 24. Traditionally, appellate review of new trial issues arises in the negative context of the failure of the trial court to grant a new trial rather than, as here, in the affirmative context of the granting of a new trial. In the former context, the inquiry on appeal is whether the trial court abused its discretion in not granting the new trial. No abuse of discretion is shown unless allowing the verdict to stand will permit an unconscionable injustice to occur. Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). However, there is no reason *386 why the abuse of discretion standard of review should not apply to a trial judge's action in granting a new trial in the face of a jury verdict. In both cases, the effect is to ignore the determination made by the initial jury. I would find that the trial judge abused his discretion in granting a new trial in the face of the jury verdict.
¶ 25. The majority finds that Maxwell v. Illinois Gulf Railroad, 513 So.2d 901 (Miss.1987), is controlling here. I disagree.
¶ 26. In my opinion, the conditional grant of a new trial under Rule 50(c)(1) of the Mississippi Rules of Civil Procedure is a final judgment for purposes of appeal. The rule is clearly didactic on this point:
If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered.

M.R.C.P. 50(c)(1) (emphasis added).
¶ 27. I believe the majority's reliance on Maxwell is misplaced. While Maxwell is factually similar to our case, I believe it is distinguishable because it is in direct conflict with the options granted by Rule 50(c)(1), and subsection (c) of the rule was not even discussed in the case. Since there was an absence of discussion of subsection (c), I cannot see how it can be concluded that Maxwell vitiates the clear parameters which subsection (c) sets for appellate inquiry.
¶ 28. I note that the majority does not attempt to explain what the phrase "unless the appellate court has otherwise ordered" means. It simply leapfrogs over this hurdle and concludes, without citing any specific authority, that the phrase is not intended to change prior judicial pronouncements that an order for a new trial is not a final appealable order. The problem with the majority's reasoning is that the appeal, notwithstanding the grant of the new trial, is permitted by virtue of the grant of the JNOV. Therefore, appellate jurisdiction is not attendant on the singular motion for a new trial. We have jurisdiction as a result of the judgment granting the JNOV. Nothing in the rule says that jurisdiction must be relinquished when review of the JNOV has been completed. For sure, Maxwell, at first blush, appears to be a problem. However, I do not believe that the majority is warranted in reading into Maxwell a construction of subsection (c) of Rule 50 when the specific subsection is not even mentioned in the case. The omission of such a discussion may have been an oversight on the part of the Maxwell court or it might have been an inadvertent and unconscious adherence to pre-rules law. I believe if our supreme court were squarely faced with a construction of subsection (c), it would construe it consistent with this separate writing.
¶ 29. To piecemeal the judicial review process in the way advocated by the majority is to ensure a waste of judicial economy. This is especially true since we have a complete and fully developed record. Why should we be precluded from looking to see whether allowing this verdict to stand would sanction an unconscionable injustice? Under the majority's interpretation of Rule 50(c), some absurd consequences could occur. For example, suppose a trial judge who, for whatever reason, wanted a certain party to win. He could grant a JNOV and a conditional new trial every time the jury returned a verdict that he did not like. Would the litigant victim of such unscrupulous tactics be without judicial recourse on appeal?
*387 ¶ 30. I believe there is good and sufficient evidence to support the verdict in this case. Both Hearn and Brown told their respective stories to the jury. The jury apparently sided with Hearn. Allowing the jury's verdict to stand, on the disputed facts of this case, will not sanction an unconscionable injustice. Therefore, I find that the trial judge abused his discretion in taking away the jury's verdict by granting a new trial. For the reasons presented, I respectfully dissent from that portion of the majority's opinion which remands this case for a new trial. I would reverse the trial court on both the grant of the JNOV and the grant of a new trial and reinstate the jury's verdict.
KING, P.J., JOINS THIS SEPARATE WRITTEN OPINION.